## BOYCE et al., Respondents, v. THE ROYAL CIRCLE, Appellant.

**St. Louis Court of Appeals, February 16, 1904.**

**INSURANCE: Mutual Benefit Association: Certificate of Health.** In an action on a benefit certificate issued by a fraternal beneficiary society, where the question for determination was whether the deceased had paid his dues, and a per capita tax, required by the rules of the order, within the time they were payable, and it appeared the defendant had refused to accept such dues and tax which were tendered after a given time; a demand for a health certificate required by the rules of a delinquent, as a condition of accepting such payments was an arbitrary measure and it was not necessary to show presentation of such health certificate in order that plaintiff might recover.

Appeal from Texas Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*Edwin S. Puller* and *Covert & Covert* for appellant.

(1)    The petition of plaintiffs states that the certificate was issued to Henderson on condition (among others) that he comply with the rules and regulations then governing the circle and the benefit fund, and that might thereafter be adopted by the supreme circle to govern said circle and fund. These rules and regulations, known as by-laws, provide for the suspension of the member and the forfeiture of his certificate in two

cases: First, for failure to pay the semiannual per capita tax of 75 cents during the months of June and December of each year, and second, for failure to pay any monthly assessment (due and payable by the terms of the by-laws on the first day of each month) within thirty days from the date it becomes due and payable. By his failure to pay the semiannual per capita tax of 75 cents during the month of June, 1900, he elected to withdraw and did withdraw from the society, and forfeited all rights against the society. His failure to pay the monthly assessments due and payable respectively on the first days of May, June and July, 1900, within thirty days from those respective dates, forfeited his membership and all rights against the defendant. Borgraefe v. Knights of Honor, 26 Mo. App. 218; Scheele v. State Home Lodge, 63 Mo. App. 277; Miller v. Grand Lodge, 72 Mo. App. 499; State ex rel. v. Grand Lodge, 78 Mo. App. 547; Yoe v. Assn., 63 Md. 86; Rood v. Assn., 31 Fed. 62; Gunther v. Assn., 40 La. Ann. 777; Society v. Baldwin, 86 Ill. 479. (2) The failure to pay either of the two classes of assessments *ipso facto* worked a forfeiture of his certificate and suspension of his membership. It then devolved upon plaintiffs to show his reinstatement and the revitalizing of his certificate in the manner provided in the by-laws, namely, payment of the assessment, accompanied by the required health certificate. Harvey v. Grand Lodge, 50 Mo. App. 472-477; Chadwick v. Triple Alliance, 56 Mo. App. 472; Curtain v. Grand Lodge A. O. U. W., 65 Mo. App. 294.

*W. L. Hiett* with *Lamar, Barton & Lamar* for respondent.

(1) The defense in this case is based upon a forfeiture of the certificate sued on, and all rights thereunder, because of failure to pay certain assessments and

dues.   The certificate does not require any to be paid, and before a forfeiture can be  predicated upon such failure to pay, the assessment must be levied.   Earney v. Modern Woodmen of  America, 79 Mo. App. 385; Hannum v. Waddill, 135 Mo. 161; Agnew v. A. O. U. W., 17 Mo. App. 254; Niblack on Ben. Soc. (2 Ed.), secs. 250 and 252; Am. Mut. Aid Soc. v. Helburn, 7 Am. St. 571 and note; Shea v. The Mut. Ben. Assn., 39 Am. St. 475; Bacon on Ben. Soc., 377.   (2)   For the reasons hereinbefore stated there was an entire failure to prove that deceased owed defendant any assessment or per capita tax, and without which testimony a failure to pay will not work a forfeiture.   The jury, therefore, arrived at the only verdict that could have been rendered under the evidence, and the judgment being for the right party it will not be reversed.   Bank v. Hoeber, 88 Mo. 37; Ittner v. Hughes, 133 Mo. 689; Earney v. M. W. A., 79 Mo. App. 385.

GOODE, J.—This case was here on a former appeal and will be found reported in 99 Mo. App. 349, 73 S. W. 300.   The record at that time was in a very incomplete state and showed practically no evidence for the plaintiff except the certificate of insurance and a section or two of the constitution of the order.   So far as we could gather, no proof was offered by the plaintiffs that they had paid the per capita tax for the latter half of the year 1900, or some of the monthly assessments. The constitution and by-laws provided for an assessment of fifty cents a month on each member of the class to which the deceased belonged, and also for a per capita tax of $1.50 a year to be paid semi-annually in June and December.   As will be seen by the statement in the former opinion, the failure of a member to pay either of those dues within the months they were payable, terminated the membership.   A member had the entire month for which an assessment was due to pay it in and could pay his per capita tax at any time during June

and December. If he failed to pay according to the by-laws, he lost his insurance and could only obtain its reinstatement on a certificate signed by himself that he was in good health; or, if he was in default for more than thirty days, on a certificate signed by the local medical examiner.

At the first trial there was a peremptory instruction to find a verdict for the plaintiffs; apparently on the assumption that it was the duty of the order to make a levy each month of the assessment and to make a levy twice each year of the per capita tax, and that a member owed nothing until a levy was made and notice of it given. On whatever theory the peremptory instruction was granted, we held it to be erroneous and returned the case for another trial. There is a complete transcript of all the evidence taken at the second trial before us now, containing the testimony of Minnie Henderson, sister of the deceased, Thomas J. Henderson, the party insured, as to the payment of, or offer to pay, his dues, as they accrued. She testified positively to paying or tendering various monthly dues during the months they matured and also to tendering the semiannual per capita tax for the latter half of the year 1900, in June, which was the month when it ought to be paid. She said she paid her own dues and tendered her brother's, or paid them, at the same time; that when she tendered the per capita tax, the secretary of the local lodge declined to accept it for the reason that he did not have his book with him and could not enter the payment. If her narration of the facts is truthful, there was simply no delinquency and the attempt to treat Henderson's membership as lapsed after May 31, 1900, was groundless. The secretary of the local lodge disputed her statements and swore the assessment for the month of May was not paid until June 11th, and that the per capita tax was not paid until more than thirty days after its maturity; either of which defaults sufficed, under the by-laws to work a forfeiture of membership. Minnie Henderson

said she tendered all dues within the time required by the by-laws, until the month of September, 1900, when she was notified that no more would be accepted because her brother's membership had been forfeited. The local secretary said that in August the dues for the months of June and July and the per capita tax were paid by Minnie Henderson, but were subsequently returned to her by him, because they were so far in default when paid as to render necessary a certificate of health from the medical examiner; which she had not furnished, but only a certificate signed by Henderson himself. In this connection it should be stated that the testimony of the secretary, Harrison, shows that he and Minnie Henderson expected the insurance to be reinstated, were co-operating to get the proper papers and that Harrison thought it immaterial whether he or she kept the money pending the reinstatement, and that, with a declaration to that effect, he gave it back to her. She denied it was given back. It further appears that in January, 1901, $1.75 was returned to her by the local secretary, that being the payment of two months' dues which accrued during the fall of 1900, and the per capita tax for the first half of the year 1901. The testimony on the question of the payment of dues is in a very confused state; for Harrison swore no dues were paid in October, November or December, 1900, and again swore the assessments for two months of the autumn and the tax, were paid and afterwards, in January, 1901, restored; though he had previously denied repaying her any money after January 1, 1901. Henderson was in the Indian Territory during this time and died there in August, 1901. During the fall an attempt had been made to reinstate him as a member by getting a health certificate from a physician as required by the by-laws; but this reinstatement was declined by the order.

It will be observed by comparing the stated facts with those which were shown by the former record, that the case as presented now is materially different from

what it was then. The questions then were, whether any assessments fell due until they were specially levied by some action of the order, and whether prompt payment of the dues had been waived by the conduct of the order. The only question submitted to the jury by the circuit court on the second trial was, whether Minnie Henderson had paid or tendered her brother's dues within the thirty days they were payable, according to the by-laws, up to the time she was notified that no more dues would be accepted. The court instructed the jury that failure to pay a monthly assessment within the month it fell due, or failure to pay the per capita tax within the first month of the period for which it was due, worked a forfeiture; but that if the monthly assessments and the per capita tax were tendered within the time they were payable, no forfeiture was worked. The court further instructed that if the local secretary of the Cabool lodge notified Minnie Henderson in September, 1900, that he would receive no further payments on Thomas J. Henderson's membership unless a health certificate accompanied the payment, the defendant order could not claim a forfeiture of the policy for non-payment of assessments or tax, thereafter, if, as a matter of fact, they found the assessments and tax had been paid promptly and without default. Those instructions declared the law; because the membership could not lapse by forfeiture if every payment was made within the time stipulated in the constitution and by-laws of the order; and under such circumstances a demand for a health certificate as a condition of accepting payments was an arbitrary measure.

Many instructions were asked by the defendant which it would expand this opinion too much to copy. Suffice to say they were either covered by the instructions given or were unsound in their statement of the law, or were inapplicable in view of the theory of the case adopted by the court. Practically, the plaintiffs were cut off from a recovery unless they proved that all

dues had been promptly paid; and as the only defense was that the insurance had lapsed because the payments were not promptly made, the finding of the jury is conclusive there being a conflict in the testimony.

The judgment is, therefore, affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.