### ARDENA B. AIKEN v. ATLANTIC LIFE INSURANCE COMPANY.

#### (Filed 18 April, 1917.)

**1. Insurance—Policy—Abandonment — Instructions — Trials — Questions for Jury.**

Where the facts are ascertained, the question as to whether a party seeking to enforce a contract had abandoned it is one of law, and, upon conflicting evidence, is a mixed one of law and fact for the determination of the jury under proper instruction from the court as to what, in law, constitutes an abandonment.

**2. Insurance, Life—Premiums—Notice—Statutes.**

An insurer may not declare its policy of life insurance forfeited or void for nonpayment of premium within the time therein specified for it to be made, when such has solely resulted from its own error in failing to properly address the notice required by the statute; and where upon receipt of the notice the insured promptly tendered payment of the premium, and keeps his tender good, and the policy remains in his possession until its maturity by death, without demand or action of the insurer, and without notification of further premiums becoming due, as the statute requires, the defense may not successfully be maintained, in an action by the beneficiary under the policy, that it had become forfeited for non-payment of premiums. Gregory's Supplement, sec. 4779a.

**3. Same—Reinsurance—Statements—Abandonment—Questions for Jury.**

A statement made for the reinstatement of a life insurance policy, that it had lapsed for nonpayment of premium, may not be declared an abandonment thereof as a matter of law, when there is evidence tending to show that a sufficient tender of payment had been duly made and wrongfully refused by the insurer, who continued to insist upon his rights.

**4. Insurance, Life—Premiums—Tender—Conditions.**

Where the insurer has erroneously declared a policy of life insurance forfeited for the nonpayment of a premium, and has refused a good tender

of payment thereof duly made, which the insured continues to insist upon and make good, and, acting upon the insistence of the insurer, the insured makes application for reinstatement of the policy under protest, remitting the premiums therewith, the insurer, having itself annexed the condition, may not successfully maintain that the tender of the insured was upon condition and therefore not sufficient in law.

CIVIL ACTION, tried before *Webb, J.*, and a jury, at November Term, 1916, of GUILFORD.

On 15 August, 1911, the American National Life Insurance Company of Lynchburg, Va., issued and delivered to E. R. Aiken its policy of insurance upon his life, payable to the plaintiff, his wife, in the sum of $1,000. The annual premium was $49.64. One year's premium was paid at the time of the issuance of the policy, and thereafter the premium was payable semiannually; $24.82 on 15 August, 1912, and a like sum on the 15th day of February and August of each succeeding year. The semiannual premium due 15 August, 1912, was paid. The semiannual premiums due 15 February, 1913, 15 August, 1913, and 15 February, 1914, were never paid. The insured died 18 April, 1914.

On 1 October, 1912, the defendant took over the assets and assumed the liabilities of the American National Life Insurance Company so far as this policy is concerned.

This suit was begun 5 October, 1914. - The complaint contained three causes of action:

The first alleged the execution and delivery of the policy, the death of the insured, and the refusal of the defendant to pay.

The second consisted of a repetition of the first cause of action and the further allegation, in substance, that it was the general custom of the American National Life Insurance Company and of defendant to notify all their policyholders of the date when premium fell due; that such notice was given as to the semiannual premiums due 15 August, 1912, which was paid by the insured. It was further alleged, in substance, that no further notice as to premiums was given by either of said companies to the insured until on or about 1 May, 1913, when he received a notice of the premium due 15 February, 1913; that this notice had been sent to the wrong address, the name being wrong and Fuquay Springs the address instead of Greensboro, the correct one; that upon receipt of it, insured at once remitted the amount by postoffice order to defendant, but it refused to receive it; it was further alleged that the insured, until his death, was ready, able, and willing to pay said premium, and that since his death plaintiff has been ready and willing to pay the same, and also that no further notice was ever given by the defendant of the maturity of the premiums which accrued during the life of insured.

26—173

The other allegations in this cause of action related to the loan value of the policy and the automatic nonforfeiture clause therein; these were abandoned at the trial, and hence are immaterial.

The third cause of action consisted, in substance, of a repetition of the first cause of action, an averment that insured was ready, able and willing to pay all premiums on the policy, and that he did pay or tender all premiums of which he received notice; it further alleged that the policy was still in force by virtue of chapter 884 of the Laws of North Carolina for 1909 (Gregory, 4779a), which provides that no policy shall be forfeited or lapsed unless notice of the amount and due date of the premium shall have been previously given, as required by the section. If by mail, the notice shall be duly addressed and postage prepaid.

The defendant answered and denied all the material allegations of the complaint except the issuing of the policy by the American National Life Insurance Company and the allegation that it had taken over the assets and assumed the liabilities of that company so far as this policy was concerned. It pleaded, as a defense to the several causes of action, the nonpayment of the semiannual premiums due 15 February, 1913, 15 August, 1913, and 15 February, 1914. It further alleged, in substance, that after the insured failed to pay the premium due 15 February, 1913, and after he had been notified that his policy had thereby lapsed, he agreed with defendant so to consider and treat it, and did so consider and treat it, and that he thereby abandoned all rights and claims thereunder; that on 31 March, 1913, he applied in writing to defendant for reinstatement of said policy, and then for the first time tendered a check for the amount of the semiannual premium due 15 February, 1913, in order to procure the consideration of his said application for reinstatement; that in said application he stated that said policy "was no longer in force"; that upon a medical examination required in such case by the policy as a condition for reinstatement, his state of health was found unsatisfactory and he was rejected as a risk by the medical director, and thereupon the defendant declined his application for reinstatement and so notified him and returned to him, unused, his check for $24.82, which had accompanied his application; that the insured never thereafter claimed that the policy was in force and never thereafter paid or offered to pay any premium thereon, but, on the contrary, abandoned said policy and all claims thereunder. The plaintiff denied that there had been any abandonment of the policy and averred that the premium due 15 August, 1913, and 15 February, 1914, were not paid because no notice thereof was given, as required by the statute and no demand made for them, and further alleged that the policy was in full force when her husband died.

The policy was retained by the decedent and was found among his papers at the time of his death. There was evidence that E. R. Aiken, the insured, had signed an application to defendant for reinstatement of his policy, which was rejected, and the check sent to pay the premium was returned to him. This occurred 26 April, 1913. The check for the premium due 15 February, 1913, was dated 31 March, 1913, and was received by the defendant on 1 April, 1913, having been sent by mail in a letter dated 31 March, 1913. In the application for reinstatement it was stated that the policy was no longer in force, because the premium due 15 February, 1913, was not paid, and that the application was subjected to the approval of the company.

The jury returned the following verdict:

"Is the defendant indebted to the plaintiff; and, if so, in what amount?" Answer: "One thousand dollars, less premiums unpaid, $74.46; total of $925.54, with interest on the balance."

*Harry B. Grimsley, Brooks, Sapp & Williams for plaintiff.*
*R. C. Strudwick for defendant.*

WALKER, J., after stating facts: The learned counsel who argued the case for the defendant in this Court, with his usual ability and clearness, stated very frankly that it turned upon two questions, first, whether the policy of insurance had lapsed for non-payment of premium, and, second, whether, as matter of law, upon the admitted facts, the contract had been abandoned by the plaintiff. The court, under correct instructions, as we think, submitted the question of abandonment to the jury and the verdict was against the defendant, the jury finding that the plaintiff did not intend to abandon the contract. There was evidence for the jury upon this question, and we cannot hold, as contended by the defendant, that the facts were of such a conclusive nature as to require a peremptory instruction that, even if the jury believed the evidence, there had been an abandonment. Two reasonable men might differ in opinion upon this question. But this will appear more clearly in the discussion of the other phases of the case. It is true, as asserted by counsel, that what amounts to abandonment is a question of law, just as what is negligence is a question of law; but whether there was an abandonment, or whether there was negligence, in any particular case, is a mixed question of law and fact, the judge declaring what is the law and the jury finding what are the facts and applying the law to them. We said in *McCurry v. Purgason,* 170 N. C., 463, 467: "As to whether the contract was abandoned is a mixed question of law and fact, as to what constitutes an abandonment being mat-

ter of law and as to whether there has been an abandonment being a question depending upon how the jury may find the facts to be. The subject is discussed in *May v. Getty,* 140 N. C., 310. See, also, *Faw v. Whittington,* 72 N. C., 321; *Banks v. Banks,* 77 N. C.; 186." The defendant relied upon *Faw v. Whittington, supra,* where *Justice Bynum* states the true rule as to abandonment of a contract. The headnote of that case is as follows:

"1. Where a defendant relies upon a renunciation of a contract in relation to the sale of land by the plaintiff, it is his duty to make it out unmistakably, and that he himself had assented to it.

"2. The acts and conduct constituting an abandonment by the vendee of his contract of purchase of land must be positive, unequivocal, and inconsistent with the contract. Mere lapse of time or other delay in asserting his claim, unaccompanied by acts inconsistent with his rights, will not amount to a waiver or abandonment."

And discussing the question more broadly, but with special reference to the facts of that case, the Court in *Faw v. Whittington, supra,* referred to *Dula v. Cowles,* 52 N. C., 290, and said that "The contract is considered to have remained in force until it rescinded by mutual consent, or until the plaintiffs do some acts inconsistent with the duty imposed upon them by the contract which amount to an abandonment." Applying these principles to the facts of this case, we think it results that the verdict is correct and should not be disturbed.

There was some dispute between the parties as to whether the insured, E. R. Aiken, had received due notice of the premium which was payable on 15 February, 1913. The evidence of Mrs. E. R. Aiken, the beneficiary and plaintiff, and Dr. O. A. Jones, was to the effect that defendant mailed a notice to E. H. Aiken, Fuquay Springs, N. C., and that the envelope inclosing it was not in fact received until 22 March, 1913. Mrs. Aiken saw the unopened envelope in her husband's mail about 22 March, 1913, and the insured immediately wrote to the company's agent about it, explaining how the delay in receiving the notice had occurred, and attributing it entirely to the company's fault in misdirecting the letter as to his name and postoffice address. The insured lived in Greensboro, N. C., and not at Fuquay Springs. He again wrote to the agent on 22 March, 1913, acknowledging receipt of the latter's letter of 20 March, 1913, and said: "Please note that I am in no way responsible for the delay in payment of the premium on said policy, and as I have been ready to remit the amount of the premium at any time when due, I do not think in a spirit of fairness that I should be required to have the expense of reëxamination." And again: "If you wish the premium on said policy and have the policy remain in force,

notify me at once and I will give the matter my prompt attention."
He received the following answer from the agent, dated 26 March,
1913: "Your letter of the 22d, addressed to the Atlantic Life Insur-
ance Company, has been referred to me. We appreciate your business
and want you to pay your premium. Please send me your check for
$24.82, together with the inclosed blank filled out and signed by you."
The blank inclosed in the letter was an application for reinstatement,
in which the original contract was stated to be no longer in force, having
lapsed by nonpayment of premium of 15 February, 1913. Right here
it is proper to state that the jury found, under the evidence and in-
structions of the court, that the plaintiff's evidence as to the time when
the notice was received by the insured was true, so that we may take
it as established that the notice was delayed by defendant's fault and
was not received until about 22 March, 1913. The insured on 31
March, 1913, wrote to the agent as follows: "Your favor of the 28th
inst., to hand, and replying to same, will say that I am sending you
application blank and check for $24.82 for premium on policy. Trust-
ing I may hear from you at an early date, I beg to remain." The
receipt of the check and application was acknowledged by the company
on 1 April, 1913, and on 26 April, 1913, the insured was informed by
the agent that the company had refused the application, and his check
for $24.82 was returned to him. This closed the correspondence, and
there was nothing more done until the insured died, on 18 April, 1914,
when payment of the policy was demanded. It appears that defendant
gave no notice of the premiums due on 15 November, 1913, and 15 Febru-
ary, 1914, and they were not paid. It does not appear that the insured
ever applied to any other company for insurance, but he kept defend-
ant's policy and it was found among his papers at the time of his
death.

The jury having found that the notice of the premium due 15 Febru-
ary, 1913, was not received until about 22 March, 1913, and as this oc-
curred without any fault of the insured, the statute of 1909 (Gregory
Suppl., sec. 4779a) prevented a forfeiture of the policy, as it provides
that none shall take place unless notice is given as therein prescribed.
The insured acted not only within reasonable time, but very promptly
when he received the notice, and made a sufficient tender of the pre-
mium, as we shall see. It is argued by the defendant that this was not a
legal tender because it was not unconditional. The correspondence
shows clearly that the insured was ready, able, and willing to pay the
premium absolutely and keep his policy alive. He annexed no condi-
tion, but it was the defendant who did so. It required the signing of
the application for reinstatement, which was done against his full asser-

tion of his rights under the existing policy and a protest against requiring him to submit to another examination. If the company had taken the check and not challenged the validity of the policy, there would have been no objection on the part of the insured. He evidently wished to continue the insurance under the existing policy, which had not lapsed or been forfeited, but was in full force, and he so thought, for he complained of the demand for a second examination and insisted upon his rights under the policy he then had.

We do not think he waived or abandoned his right by signing the application. In a similar case, *Coile v. Commercial Travelers of America,* 161 N. C., 104, this Court, by *Justice Brown,* said: "It is true, the plaintiff applied for reinstatement prior to the accident, and it is contended that this was an acknowledgment that he had been properly suspended. We do not think so. The plaintiff applied because he had been notified that he had been suspended; but he had a right also to rely upon the fact that his Assessment No. 99 had been paid and that the company had no right to suspend him." And in *Mutual Life Assn. v. Hamlin,* 139 U. S., 297, at p. 306, it is said by *Justice Harlan* for the Court: "Some stress is laid upon the fact that an application was made in December, 1884, in the name of the insured, for reinstatement as a member of the association. When information of the June assessment was received by Mrs. Hamlin, the beneficiary in the contract of insurance, in September, 1884, she promptly offered, through a friend, to pay all previous unpaid assessments upon the insured. The defendant refusing to accept such payment, and denying that the insured was any longer one of its members, the attempt was made to have him reinstated by the act of the association. That attempt—evidently made to avoid litigation—cannot be regarded as a waiver of the rights the insured had as a member; for those rights were not forfeited by his failure to pay the assessment of 2 June, 1884, the only one in question; notice of which, as the jury found, was not given as required by the contract." If this is the law, it cannot be said that the existing policy had lapsed, or was no longer in force, by reason of the insured having signed an application, which was promptly rejected. A reinstatement follows upon a true and legal suspension in a fraternal order, or a lapse or forfeiture in the case of an ordinary life policy; but in this case, as we have shown, there was no lapse and the policy was then in force. If we should hold otherwise, it would substantially be allowing the defendant to take advantage of and to profit by its own wrong. The whole effort at reinstatement proceeded upon a false basis, that is, the assumption by the defendant that a fact existed, which was that there had been no payment of a premium of which notice was properly given, which

was false, as the fact did not exist, and the jury so find. The defendant should not have been misled by the circumstances resulting from its own negligence. *Collins v. U. S. Casualty Co.*, 90 S. E., 585. It would be dangerous to decide that it could virtually cancel a policy in any such way, and would, at least, be unfair and unjust. The company was itself in fault, and not the agent, for he is to be commended for having acted with proper courtesy and consideration, and it is quite evident that he did not anticipate any loss by the insured of his policy. But it would seem that the "home office" of the company did not act its part so well.

It is contended that the insured by his subsequent conduct has waived his claim under the policy, but we do not think so. The defendant had returned his check and he was not required to controvert with it any longer, but could silently stand upon his legal right. He had asserted this right once, and rather emphatically, and was required to do no more. There was no necessity of a reinstatement, as the insured had not forfeited his policy. It was not his fault that the notice went astray, but that of the defendant, and the latter cannot be permitted to take advantage of its own wrong. If the policy had, in fact, been forfeited, the proceedings to reinstate would have played a more important part in the case. As it is, the insured should not be prejudiced by filing a petition to reinstate, for he did merely a vain, or unnecessary, thing, and should lose nothing by it. His position is not changed, but is the same as it was before he applied to the company, at its request or suggestion, for reinstatement. 25 Cyc., 849, note 87, citing *Appleton v. Phœnix Mutual Life Ins. Co.*, 59 N. H., 541.

It is perfectly manifest from the evidence that the jury were right in finding that the insured had no intent to abandon his contract, as he was trying to preserve it. The only thing he has done was to admit something which has been found to be untrue, or incorrect, that is, the lapse of the policy. In *Manhattan Life Ins. Co. v. Wright*, 126 Fed., 82, at p. 88, *Judge Sanborn* (of the Circuit Court of Appeals) said: "Nor does the record seem to us to establish the defense that the complainant or Thomas W. Wright, her husband, ever abandoned their rights under the policy in hand. The test of abandonment is the existence or nonexistence of intent to abandon. Acts indicating abandonment are not always sufficient to establish it, and are generally material only as they tend to prove the intent to abandon. *Saxlehner v. Eisner and Mendelson Co.*, 179 U. S., 19, 31; *Dawson v. Daniel*, 7 Fed. Cas., pp. 215, 216, No. 3669; *Singer Mfg. Co. v. June Mfg. Co.*, 163 U. S., 169, 186; *Moore v. Stephenson*, 27 Conn., 13; *Livermore v. White*, 74 Me., 452; *Judson v. Malloy*, 40 Cal., 299; *Hickman v. Link*, 116 Mo.,

123.   The presumption is that the owner of property or of rights to
property intends to preserve them, because this is the usual purpose of
such owners.   The burden is on him who alleges abandonment to
clearly establish the intent to abandon by evidence sufficient to over-
come this natural presumption.   The insurance company failed to bear
this burden successfully.   The record is barren of evidence that the
complainant, the beneficiary in the policy, ever had any intention, or
ever did any act evidencing an intention, to abandon her contract of in-
surance or her rights under it."   In that case the insured had received
a letter from the company stating that his policy had lapsed, and "it
presumed that he did not care to revive and continue his policy."   He
made no reply and took no action in regard to the matter.   He had ex-
pressed a desire not to "hazard" his policy.   The policy had not lapsed,
and both sides were silent for eight months, at the end of which time the
insured died.   The Court said:   "This evidence does not convince that
Wright even intended to abandon his policy or his rights in equity which
he was entitled to enforce thereunder."   The legal effect of that decision
is elsewhere stated to be that where an insured had declared his desire
to continue his insurance, a failure by him to reply to a letter from the
company, received about eight months before his death, and erroneously
stating that the policy had lapsed and that it was presumed that he
did not care to revive his policy, did not amount to an abandonment
thereof.   If that be true, and a very able and learned Court so held,
there has been no abandonment here, or we are entirely safe in saying
that it was, at least, a proper question for a jury to settle.   The facts
of this case are quite as strong for the plaintiff as were those in that
case for the complainant, Mrs. Wright; the only difference being in
the time, our period being twelve months and the other eight months
before the death of the insured, and that is so slight as to be immaterial.
The insured here kept his policy among his papers, after the premium
which he had tendered was returned, and the company took no action
at all to have the policy surrendered or canceled, and the insured was
not required to pay the other two premiums until properly notified un-
der the statute.   The company will not be heard to say that it did not
give the notice because it had illegally and wrongfully declared the
policy as lapsed.   It was a live policy, under the law, and the notice of
premiums was required.   25 Cyc., 784, and cases; *Mutual L. Co. v.
Dingley,* 49 L. R. A., 132; *McAlister v. Ins. Co.,* 101 Mass., 558.   To
constitute an abandonment in respect to a right secured, there must be a
clear, unequivocal, and decisive act of the party; an act done which
shows a determination in the individual not to have a benefit which is
designed for him," 1 Cyc., 5.   Such an intention is not presumed.   1

Cyc., 7. "Where payments on a certificate are refused unless the member complies with conditions which he is not required to comply with according to his contract, as, for instance, furnishing a health certificate when he is not in arrears, or the association would not, by reason of an attempted expulsion, receive payments, or has wrongfully suspended a member or forfeited his membership, or has on unwarranted grounds refused to accept payments, a failure to pay or tender subsequent assessments will not prejudice the rights of the insured and his beneficiary until after notice of a readiness to receive the payments has been brought home to him." 3 Cooley's Briefs on Insurance, p. 2378; *Boyce v. Royal Circle,* 104 Mo. App., 528; *Byrum v. Sovereign Camp,* 108 Iowa, 430; *Supr. Council Am. L. of Honor,* 119 Fed., 682.

As the insured made a proper tender as soon as notified of the premium being due, and the application for reinstatement being out of the way, it preserved his rights under the original policy to the same extent as if the tender had been accepted, as the company cannot refuse a legal tender and then deny its liability to the policyholder. As the application did not have the effect of destroying the plaintiff's right, and as the policy was still in force, because no notice was duly given of the premium due 15 February, 1913, and tender of the premium was promptly made when notice was received; nothing afterwards done deprived plaintiff of her claim, as mere silence did not do so, and everything that did occur was directly traceable to defendant's first and continued wrong.

The issue being sufficient in form and substance for the parties to present all relevant questions, the court did not err in refusing to submit those tendered by defendant. *Power Co. v. Power Co.,* 171 N. C., 248.

The evidence admitted by the court was clearly competent. We will not extend this opinion by a discussion of other exceptions, which are really involved in those already considered.

The finding below is amply sustained by the evidence, and there is nothing in the record to indicate that the court has either mistaken the facts or erred in the application of the law; but if there was any error, it was not prejudicial, but, on the contrary, in the defendant's favor.

No error.