## PHILADELPHIA LIFE INS. CO. v. HAYWORTH.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1924.)

No. 2121.

1. **Bills and notes ☞404(2)—Postdated bank check not required to be presented on day of its date; "check"; "tender of payment."**

Under Negotiable Instruments Act, §§ 78, 192 (C. S. N. C. §§ 3052, 3167), providing that a "check" is a bill of exchange drawn on a bank, payable on demand and that instruments payable on demand may be presented within a reasonable time after their issue, a postdated check, like any other, need not be presented on the day of its date, but may be presented within a reasonable time thereafter, and the fact that the drawee had money on deposit to meet it on that date, but did not have it when the check was presented, is not equivalent to a "tender of payment" under Negotiable Instruments Act, § 77 (C. S. N. C. § 3051).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Check; Tender.]

2. **Tender ☞13(3)—To amount to tender of payment ability to pay must continue to close of day of presentation.**

Under Negotiable Instruments Act, § 77 (C. S. N. C. § 3051), which provides that, if an instrument is by its terms payable at a specified place and the person liable thereon is able and willing to pay it there at maturity, such ability and willingness are equivalent to a tender of payment, if the instrument is a bank check, payable on a particular date, to bring it within the statute the drawer's deposit must be sufficient to meet the check throughout the entire banking hours of that day.

3. **Insurance ☞360(4)—Return of premium note on receipt of check not unconditional acceptance of check as payment.**

Where, by the terms of a life policy, it became forfeited on failure to pay any premium note when due, return of a note by the insurer on receipt and deposit of a check for the amount was not an unconditional acceptance of the check as payment, but the note continued in force until the check was paid, and on refusal of payment by the drawee the policy was forfeited.

4. **Insurance ☞349(1)—Plain provisions for forfeiture in a policy will be enforced.**

If there is any real ambiguity in the provisions of a policy for forfeiture for nonpayment of premiums, they will be resolved against the insurer; but, if their meaning to the ordinary reader is plain, there is no reason why they should not be enforced.

5. **Insurance ☞310(2)—Statute requiring notice prior to forfeiture of policy.**

Under C. S. N. C. § 6465, providing that no life insurance policy shall be forfeited for nonpayment when due of any premium within one year after default in such payment unless written notice was given insured of the time and place of payment and that forfeiture would follow nonpayment, where there has been a default and forfeiture and the insured was

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

furnished a health certificate and secured a reinstatement and an extension of time for payment, it is not necessary to again give the statutory notice of the time when the extention notes will become due.

In Error to the District Court of the United States for the Western District of North Carolina, at Greensboro; James E. Boyd, Judge.

Action at law by Sarah K. Hayworth against the Philadelphia Life Insurance Company. Judgment for plaintiff, and defendant brings error. Reversed, and remanded.

William H. Bobbitt and John J. Parker, both of Charlotte, N. C. (J. F. Spruill, of Lexington, N. C., and Plummer Stewart and John A. McRae, both of Charlotte, N. C., on the brief), for plaintiff in error.

Z. I. Walser, of Lexington, N. C., and Louis M. Swink, of Winston-Salem, N. C. (D. A. Walser, of Lexington, N. C., Swink, Clement & Hutchins, of Winston-Salem, N. C., and Walser, Walser & Walser, of Lexington, N. C., on the brief), for defendant in error.

Before WADDILL and ROSE, Circuit Judges, and SOPER, District Judge.

ROSE, Circuit Judge. The plaintiff in error was defendant below; and the defendant in error, the plaintiff, and they will be so styled here. The plaintiff, Sarah K. Hayworth, is the widow of John B. Hayworth and was the beneficiary named in a policy upon his life issued by the defendant, the Philadelphia Life Insurance Company. By its terms, the defendant bound itself to pay $6,000 if the insured died from bodily injuries caused solely by external, violent and accidental causes and $3,000 if death came in any other way, except by suicide, in which excepted case there was to be no liability at all. On the afternoon of June 21, 1922, the insured was found in his store with a bullet wound in his head and his pistol near by. Two days later, he died from this injury which the jury found was not self-inflicted. There was evidence to sustain this finding no matter in how great mystery it leaves the tragedy. We are not persuaded that there was any error in letting the medical man who attended him and examined his wound testify that he (the physician) did not see how it could have been self-inflicted. It follows that the defendant owes the plaintiff $6,000 if the policy was in force at the time of the death.

It was issued September 24, 1920, when the first annual premium of $100.08 was paid. It provided, with certain exceptions not here material, "Failure to pay any premium or note when due will forfeit the policy and all payments made thereon." The second premium was not paid when it fell due a year later and the policy became forfeited. On the 12th of November, the insured furnished the defendant with an acceptable health certificate, paid $27.33 in cash, and gave his three promissory notes, of $25 each, payable on the 24th days of the succeeding December, March, and June, respectively. In each of these premium notes, the insured said:

"It is understood and agreed by me that if this note is not paid upon its maturity or at the expiration of any period to which it shall have been extended, the said insurance contract No. 58160 shall lapse and all further liability of the said Philadelphia Life Insurance Company on account of said contract shall immediately cease and determine, subject to the privileges and

provisions therein stated and that the money which had been paid on account of the premium or premiums for the balance of which this note is given shall be forfeited to the company. No personal liability accrues under this note and in the event of the nonpayment the sole remedies of the company shall be as stated herein."

The note falling due on December 24, 1921, was paid; that, maturing on March 24, 1922, was not, and for a second time the policy was forfeited. On the 8th of May, the defendant received from the insured a health certificate and a check for $25.60 postdated June 6th for the overdue note and interest. On the 11th of May, the defendant in writing acknowledged the receipt of these papers, accepted the health certificate, reinstated the policy, and said "that the time for the payment of the overdue note was extended to June 6th on which date we will deposit your check and forward this note to you." On the 7th of June, the day after the check bore date, the defendant deposited it in the West End Trust Company, Philadelphia, and at the same time mailed the note to the insured. The check in regular course reached the Bank of Lexington, N. C., upon which it was drawn, on June 9th. Payment was refused because of lack of funds. The check was returned to the Federal Reserve Bank of Philadelphia from which it had come and apparently reached that institution on the 13th of June. It was then sent back to the Bank of North America, and from it to the West End Trust Company, and was by it delivered to the defendant on June 21st. On the next day, the 22d, defendant wrote to the insured that his check had been returned unpaid and that as it had been given in payment of his note for $25 together with accrued interest due by extension to June 6, 1922, the policy had lapsed. The defendant added it presumed that the check was returned by mistake and said that it would be pleased to receive a remittance of $25.60 in payment of the note and interest and to reinstate the policy provided the remittance was received at defendant's office on or before July 3, 1922, and was accompanied by a health certificate satisfactory to its medical department. The insured died before this letter reached Lexington.

[1] In accordance with the North Carolina practice, the learned court submitted, in all, nine issues to the jury. Seven of them related to matters which were not in dispute. To the one which asked whether the insured's wound was self-inflicted, the answer was, "No." The only other was apparently framed upon a misunderstanding of that part of section 77 of the Negotiable Instruments Act (section 3051, Consolidated Statutes of North Carolina) which declares that—

"Presentment for payment is not necessary in order to charge the person primarily liable on the instrument; but if the instrument is by its terms payable at a special place, and he is able and willing to pay it there at maturity, such ability and willingness are equivalent to a tender or payment upon his part."

The issue in question asked, did the assured have funds at the Lexington Bank to meet the check on June 6, 1922, and the jury said, "Yes." The learned court below accepted the view of the plaintiff that as the check was postdated it was not payable on demand, and therefore section 78 of the Negotiable Instruments Act (Consolidated Statutes of North Carolina, § 3052) required its presentment on the

day of its date. We know of no authority that so holds. Section 192 of the Negotiable Instruments Act (section 3167, Consolidated Statutes of North Carolina) says that "a check is a bill of exchange drawn on a bank payable on demand." Instruments payable on demand may be presented within a reasonable time after their issue. Negotiable Instruments Law, § 78 (Consolidated Statutes of North Carolina, § 3052). In this respect there is no difference between a postdated check and any other. In either case it should be presented within a reasonable time after its issue, but the only effect of a failure to present within such time is to discharge the drawer from liability to the extent of the loss caused by the delay. Negotiable Instruments Act, § 193 (Consolidated Statutes of North Carolina, § 3168). It goes without saying that in. contemplation of law, the drawer has suffered no loss if the money has, in the meantime, by his voluntary act, been applied to some purpose other than that of paying the' check. It will make no difference that in the result, it turns out that such application was unwise on his part and that he would have been far better off had he used the money to pay the check instead of spending it otherwise.

[2] Moreover, even if the defendant with its offices in Philadelphia had been under any obligation to present the check at the Lexington Bank on the day it bore date, the issue as submitted to the jury was not so framed as to direct their attention to the question of fact upon which in view of the evidence they were to pass. It simply asked whether the insured had funds in the Lexington Bank to meet the check on June 6, 1922. In any conceivable view of the law, defendant was not chargeable with laches if it presented the check on June 6th at any time during banking hours. It is clear that the insured could not claim that he made a tender unless he had the money to meet the check in the bank just before its regular closing time, and the evidence offered on behalf of the plaintiff shows that he did not then have it there. The plaintiff put in evidence the bank's books so far as they related to'the assured's account. At the close of business June 5th, he had a balance of $31.29 to his credit. On June 6th, two checks of his, one for $15 and the other for $15.07, were presented, paid, and charged to his account so that when the bank closed on that day, his balance was $1.22. Thereafter nothing was ever credited to his account, and from some time during the banking day of June 6th to his death, he never had more than $1.22 in bank. It is true the bank official who produced this account and proved its accuracy said in his direct examination that if the check for $25.60 had been presented June 6, 1922, it would have been paid, but in redirect he qualified this answer by saying "that if it came through regular mail channels, it would have been paid." He negatived any possibility that the insured had arranged with the bank to protect the check in question or that the bank would have knowingly permitted the insured to overdraw his account. He said the check would not have been paid if presented after the two $15 checks had been. His evidence makes plain what he meant by saying the check would have been paid if presented on June 6th. He took it for granted if that check had been presented that day, it would have reached the bank a little after 8 in the morning because that was the time of the arrival of the mail

which brought the checks from the northeast. He assumed that the other two checks, which he supposed were local ones, had come to the counter later in the day; but defendant was not bound to have had the check mailed to the bank. It could have sent it to some local agent to present on June 6th. If it was under a legal obligation to make sure that it was presented on that date, such would have been a judicious thing to do. Defendant in effect asked that the jury be told that upon the uncontradicted evidence, the assured was not willing and able to pay the check at the Lexington Bank just before its closing on June 6th, but its request was denied. Plaintiff's counsel say that even if there was error in submitting this issue to the jury or in basing any judgment upon the answer made to it, yet upon the undisputed evidence in the case, the plaintiff is entitled to recover the amount for which she sued, and therefore no harm was done.

[3, 4] In some comments filed by the learned judge below at or about the time he allowed the writ of error, he expressed the opinion that defendant had accepted in payment of the note of March 24th the postdated check and had relinquished its right to forfeit the policy for the nonpayment of the former instrument. This view is strongly urged upon us by the able and zealous counsel for the defendant. The letter of May 11th makes clear that the defendant did not at that time accept the check as payment of the note, for it said it would hold the latter until the date the check bore. It is urged that the return of the note to the insured at the same time defendant deposited the check amounts to a nonconditional acceptance by it of the check as payment of the note. To our apprehension the law is clearly otherwise. An agreement that a check is received in satisfaction of a note is not implied from the surrender or cancellation of the note. Until the check was paid the note was in force, and unless it was paid at the time to which it was extended, the policy was by its terms forfeited. Forfeitures, it is true, are not favored in the law, but promptness of payment is essential in the business of life insurance. New York Life Insurance Co. v. Statham, 93 U. S. 24, 23 L. Ed. 789. If there is any real ambiguity in the provisions of a policy providing for forfeiture for nonpayment, they will, of course, be resolved against the insurer, but if their meaning to the ordinary reader is plain, there is no reason why they should not be enforced. New York Life Insurance Co. v. Statham, 93 U. S. 24, 23 L. Ed. 789; Thompson v. Insurance Co., 104 U. S. 252, 26 L. Ed. 765; Knickerbocker Life Insurance Co. v. Pendleton, 112 U. S. 696, 5 Sup. Ct. 314, 28 L. Ed. 866; Iowa Life Insurance Co. v. Lewis, 187 U. S. 335, 348, 23 Sup. Ct. 126, 47 L. Ed. 204.

[5] The plaintiff in this court has raised a contention which does not from the record appear to have been passed upon below. She says that section 6465, Consolidated Statutes of North Carolina, provides among other things:

"That no life insurance corporation doing business in this state shall, within one year after the default in payment of any premium, installment, or interest, declare forfeited or lapsed any policy * * * nor shall any such policy be forfeited or lapsed by reason of nonpayment, when due, of any premium, interest, or installment or any portion thereof required by the terms of the policy to be paid, within one year from the failure to pay such premium,

interest, or installment, unless a written or printed notice stating the amount of such premium, interest, installment or portion thereof due on such policy, the place where it shall be paid, and the person to whom the same is payable has been duly addressed and mailed, postage paid, to the person whose life is insured * * * at least fifteen and not more than forty-five days prior to the date when the same is payable. The notice shall also state that unless such premium, interest, installment or portion thereof then due shall be paid to the corporation or to the duly appointed agent or person authorized to collect such premium, by or before the day·it falls due, the policy and all payments thereon will become forfeited and void, except as to the right to a surrender value or paid up policy, as in the contract provided. * * * No such policy shall in any case be forfeited or declared forfeited or lapsed until the expiration of thirty days after the mailing of such notice."

The suggestion that the forfeiture of the policy could not be enforced because of noncompliance with this statute was not alluded to by the learned judge either in his charge to the jury or in the comments he filed at the time the writ of error was allowed. The record shows that the insured knew that the policy had been forfeited for the failure to pay the annual premium. He subsequently furnished a health certificate which the company required as a condition to its assent that the policy should be revived and the same thing happened upon failure to pay at maturity the note falling due March 24, 1922. Under such circumstances at the trial below everybody evidently felt it unnecessary to prove compliance with the statutory requirements as to the notice necessary to sustain forfeiture for the original non-payment of the annual premium. The furnishing of the health certificate by the insured was strong evidence that the forfeiture provisions of the policy had been duly called to his attention and there is nothing in the facts here to rebut that presumption as there was in Aiken v. Atlantic Life Insurance Co., 173 N. C. 400, 92 S. E. 184. The North Carolina statute is an almost verbal copy of the much earlier enacted law of New York upon the subject, and the Court of Appeals of that state has held that if the statutory notice be given in proper time before the due date of the premium, it is unnecessary to give another prior to the time at which the extension notes fall due. Conway v. Phœnix Mutual Life Insurance Co., 140 N. Y. 79, 35 N. E. 420. This case was decided in 1893, 16 years before the North Carolina Legislature enacted in effect the New York statute there construed, and was again followed in O'Brien v. Union Central Life Insurance Co., 207 N. Y. 180, 100 N. E. 702. In Owens v. Insurance Co., 173 N. C. 373, 92 S. E. 168, such construction was tacitly put upon the statute by all concerned. There the payment of a note given for the premium had by agreement been postponed until the 1st of December, 1915. Throughout the discussion of the case, it was taken for granted that if the note had not been paid on or before December 1st the policy would have been void. The suggestion that the statutory notice had to be given not only at the time the premium was payable but at the time to which the payment of the premium note had been postponed did not occur to anybody. Upon the case made, the defendant was entitled to have had granted its request for an instructed verdict in its favor. It follows that the judgment below must be reversed and the case remanded for a new trial.

Reversed.