WILLIAM J. BERNSTEIN *v.* OHIO NATIONAL LIFE INSURANCE COMPANY

(No. 8104)

Submitted October 22, 1935. Decided December 3, 1935.

*Charles W. Louchery, Kendall H. Keeney* and *Walter Schmitt,* for plaintiff in error.

*Strother & McDonald,* for defendant in error.

MAXWELL, JUDGE:

On the 16th of November, 1925, the defendant, Ohio National Life Insurance Company, issued to the plaintiff, William J. Bernstein, a life insurance policy with a health and accident contract attached. The life insurance was in the sum of $5,000.00, and under that feature of the undertaking the insurer agreed to pay to the insured one percentum of the face of the policy per month in event of total and permanent disability of the insured, "while such policy is maintained in force by the payment of premiums." Under the health and accident contract, the company agreed to pay Bernstein $35.00 per week "for loss of time by reason of his continuous and complete disability resulting from any disease or accident * * * not to exceed, however, twenty-six such weekly payments and Fifty Dollars ($50.00) monthly thereafter so long as said insured is permanently, continuously and wholly prevented from pursuing any and all gainful occupations * * *."

Plaintiff became totally and permanently disabled from illness November 14, 1932. The insurance company maintains that both contracts had theretofore lapsed and therefore it

declined to make payments to the plaintiff. He sued on both of the stated undertakings of the insurer. To a judgment in plaintiff's favor, on verdict, for $1,185.00, the defendant prosecutes this writ of error.

The annual premium for the life policy for the first ten years was $98.85, for the health and accident contract $51.25. It is specifically provided that although the two were issued together for economy, the latter shall not be deemed a part of the former; further, the accident policy shall be renewable by the payment of the premiums therein stipulated "only in case all premiums are duly paid upon such policy of life insurance." The premiums were payable together, and for some time after the policies were issued the insured paid the premiums semi-annually, being $75.05 each payment, but prior to the spring of 1932 a quarterly basis had been adopted by him with the approval of the company, each payment being $39.00.

The policies provided for thirty days grace on all premiums subsequent to the first one. The life contract contains a provision for automatic premium loans in event of failure to pay premiums within the grace period, but the health and accident contract contains no such provision.

A quarterly premium fell due May 16, 1932. On the 15th of June, 1932, the insured mailed to D. S. Bromley, general agent of the defendant, at Clarksburg, West Virginia, a check dated June 16, 1932, covering the amount of said premium, with request that the same not be presented for payment before July 5, 1932. Bromley forwarded the check to the home office at Cincinnati. The company declined to accept the check in payment of the premium, but the plaintiff insists that by reason of a course of conduct theretofore established between him and the company's general agent, Bromley, whereby belated premium payments were accepted, the company is estopped from denying that the May premium was sufficiently tendered; that the said course of conduct constituted a waiver by the company of prompt payment of subsequent premiums.

The company took the position that the health and accident contract definitely lapsed at the end of the grace period,

June 16, 1932, but recognized the applicability of the premium loan extension as to the life contract. This extension carried the life policy until July 16, 1932.

On the 13th of August, 1932, the insurance company wrote Bernstein informing him that the life policy had lapsed and offered to furnish him information of a reinstatement plan if he were interested. He made no effort to reinstate the policy. The illness on which Bernstein bases his claim manifested itself in a serious manner November 14, 1932. The company, because it considered that the policy had expired, did not respond to plaintiff's claim which his counsel presented to it in December, 1932.

If the company improperly refused Bernstein's purported tender of premium due May 16, 1932, there was no necessity for him to offer to pay any subsequent premium. "Where an insurer refuses to accept a premium on the ground that it is tendered too late, insured is not required to make further tenders on recurring premium dates." *Reed* v. *Life Assur. Society,* 190 N. Y. 111, 82 N. E. 734. For iteration of same principle see, *Hawkins* v. *Ins. Co.,* (Mo. App.) 78 S. W. (2d) 543; 14 Ruling Case Law, p. 987; 3 Couch on Insurance, sec. 637a; *Aiken* v. *Atlantic Life Ins. Co.,* 173 N. C. 400, 92 S. E. 184; 32 Corpus Juris, p. 1307.

The record does not disclose all the premium payments made by Bernstein, but as to those which appear these facts obtain: Each check was drawn on the last day of the grace period or a day or two prior, and, without exception, there was request by Bernstein of Bromley, general agent, that he hold the check until a designated date, varying from fifteen to twenty-three days. Until 1932 this procedure did not come to the attention of the home office because Bromley made remittances with his own checks to the proper officials of the company and made no note of the fact that he was holding Bernstein's checks.

As to the premium due February 16, 1932, the situation was different. On March 15th, Bernstein sent his check for the amount due, $39.00, to Bromley with request that he hold the same until April 5th. Bromley forwarded this check to the home office March 29th and it was deposited in bank by the

company April 1st. Official receipt was issued. In forwarding the check Bromley wrote, "We are enclosing check in payment of quarterly premium on the above policy (53,207— Bernstein), which we have been holding since March 15th. Please let us have premium receipt for delivery to the insured." It is to be observed that this letter did not inform the company that the check had been held at Bernstein's request. But even if the letter had carried that information, the company's acceptance of the check would have constituted no more than a sporadic act of indulgence in nowise establishing a fixed course of conduct. 32 Corpus Juris, p. 1348; 14 Ruling Case Law, p. 1184.

In the recited circumstances pertaining not only to the premium of May 16, 1932, but also those preceding, there is nothing to afford substantial basis for the proposition that a course of conduct had been established upon which the insured could later rely. The essence of the situation was that Bernstein's continual tardiness was leniently dealt with by Bromley. He undertook to accommodate his continually belated customer.

The case of *Wolfe* v. *Life Ins. Co.*, 113 W. Va. 884, 170 S. E. 182, much relied on by the plaintiff, presents a very different situation, and we think the holding there constitutes no precedent for the case at bar. In the *Wolfe* case the insured was always ready to pay on time but the company's collector habitually made the collections a few days after the premiums matured. Though remittances were made by the collector to the company as though the premiums had been paid on time, we held that Wolfe was not bound by that circumstance between the company and the collector; that the insured "was privileged to deal with the agent on the basis of what the company held him out to be." That holding was made in the light of the outstanding fact of the continued promptness of the insured in making the payments each month when the agent called for them. And the payments were made by the insured in the belief that he was complying with all requirements that were exacted of him, which was in fact the case. To have upheld the company's contention that the insured should not recover for an injury received late in the afternoon

of August 1, 1931, because the premium due that day had not been collected by the company's agent would have put a reward on the dereliction of the agent who was customarily tardy in collecting the premiums. At bar the situation is reversed. The outstanding fact is the habitual lateness of the insured. His requests for the favor of the agent came regularly. Recovery would constitute a reward to the plaintiff for having obtained the much sought indulgence of the agent.

Much appears in the record in respect of the premium due May 16, 1932. On June 15th, being the next to the last day of the grace period, Bernstein mailed to Bromley at Clarksburg a check dated June 16th. Bernstein says that this was done in pursuance of a telephonic communication between him and Bromley the 15th in which Bromley said he would take care of him as formerly. Bernstein's request was that this check be held until July 5th. Bromley did not send his own check for remittance to the company and hold Bernstein's, but mailed the latter's check with a letter of explanation to the home office. The company promptly refused to accept the check, returned it to Bromley, and directed him to return it to Bernstein. At Bernstein's request, Bromley, by further communications, urged the company to accept the check but it declined. Though the company refused to accept as payment his check with the imposed condition that it be held for about twenty days, the automatic loan provision of the policy was recognized by the company as preventing immediate lapse. The life policy could have been saved by Bernstein by paying not later than July 16th the amount of the premium plus a few cents interest. He was definitely informed by the home office that under the automatic loan extension clause of the life policy it would be carried until July 16, 1932, when it would expire. Nothing further was done by him.

In this situation, we are unable to visualize wherein either Bromley, as general agent, or the company itself, acting through officials in the home office at Cincinnati, did anything which involved a departure from the letter or the spirit of the contract, or that Bernstein was in any manner misled; nor do we perceive that the prior conduct of the parties, to

which we have referred, was such as to warrant a belief by Bernstein that there had been established a course of conduct which would justify him in being perennially late in paying the maturing premiums.

We are therefore of opinion that the verdict is not supported by the evidence, and consequently the judgment must be reversed and the verdict set aside.

*Judgment reversed; verdict set aside; case remanded.*