(91 South. 595)

### NEW YORK LIFE INS. CO. v. NORRIS.
#### (6 Div. 394.)

(Supreme Court of Alabama. Oct. 20, 1921. Rehearing Denied Nov. 24, 1921.)

**1. Pleading** ⬅204(6)—**Replication applicable to part but not all allegations of plea held not demurrable.**

Where a plea, in an action on a life policy, adopted the allegations of the previous plea setting up a failure to pay premium ·and interest on a note when due, and further alleged a forfeiture of the policy by acts subsequent to the nonpayment of that premium, a replication alleging tender of the premium and interest was appropriate to avoid the allegations of the plea with respect to nonpayment of premiums and interest, and a demurrer to the replication, as applied to that plea, was properly overruled, though the other acts of forfeiture therein also alleged were subsequent to the tender.

**2. Insurance** ⬅360(1) — **Refusal of tendered premiums excuses future tender.**

Where the insured or some person acting for him seasonably tenders payment of the premium due on a policy, which tender was refused by the insurance company, such refusal relieves the insured of the duty of tendering payment of future premiums, unless the insurer recants its refusal and advises the insured of that fact, manifesting a willingness to accept the tender as of the time it was seasonably made.

**3. Insurance** ⬅360(1) — **Refused tender of premium need not ·be kept good.**

A seasonable effective tender of premium on a life insurance policy, which was refused by the insurer,· need not be kept good by the retention of the money so tendered, but the rights of the insurer in that respect will be conserved by the appropriate reduction of the amount recoverable under the policy, by the aggregate of the unpaid premiums with interest thereon from the respective dates they should have been paid.

**4. Insurance** ⬅360(1)—**Refusal of tender of premium with promise to take matter up with head office held unconditional.**

Where the agent of an insurance company refused to accept the premium and interest then due on the policy, when ,tendered by the wife of insured, his statement that there was some

question about the loan,· and that he would take the matter up with the home office and advise the insured did not make the refusal conditional, but was merely the assertion of a reason for the refusal.

**5. Appeal and error** ⬅1058(2)—**Exclusion of answer, whose material substance has already been stated, is not prejudicial.**

Where a witness had already stated that insured had applied to him for a policy of insurance after the alleged forfeiture of the policy in suit, and had stated in his application he had no other insurance, an answer to a further question as to what he said with reference to trying to get a policy, after the application was rejected, would not have .materially aided or amplified the admission insured had no other insurance, and its exclusion was not prejudicial to the insurance company.·

**6. Insurance** ⬅234—**Declaration of insured he had no insurance after ineffectual forfeiture by insurer does not estop claim under policy.**

Where the insurance company had erroneously declared a forfeiture of the insurance policy and continued to insist upon such forfeiture, a declaration by insured ·in a subsequent application that he had no insurance was not an acquiescence in the asserted forfeiture, and does not estop a subsequent assertion by the beneficiary of insurer's liability under the policy.

**7. Insurance** ⬅234—**Insured need not repudiate attempted forfeiture, after refusal of tender of premiums.**

Where insured duly tendered a premium when due, which was refused by the company, he need not thereafter, to protect his rights under the policy, expressly repudiate an attempted forfeiture by the company of the policy.

**8. Trial** ⬅56—**Objection to question. already substantially answered was properly sustained.**

There was no error in sustaining an objection to a question asked a witness, where the essence of the answer thereto had been already stated by the witness.

#### On Rehearing.

**9. Appeal and error** ⬅1040(1) — **Sustaining demurrers to rejoinders interpreting denials held not prejudicial.**

There was no error prejudicial to defendant in sustaining demurrers to defendant's rejoinders, which were merely explanatory of the denials in previous rejoinders, where all of the evidence, which would be admissible under the rejoinders held bad, was admissible under the denials.

Appeal from Circuit Court, Jefferson County; Horace J. Wilkinson, Judge.

Action by Celia Norris, as beneficiary, against the New York Life Insurance Company, upon a life insurance policy issued to her husband, now deceased. Judgment for the plaintiff, and the defendant appeals. Affirmed.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The following are the defendant's pleas:

"3. For further plea and answer to the complaint, the defendant says that said policy was issued on the application of Frank M. Norris on, to wit, July 3, 1905, with an annual premium of $300.15, payable on the 3d day of each July thereafter, and constituted a contract of insurance between said Frank M. Norris and the defendant, with the plaintiff as beneficiary therein; with the right in said Norris to change said beneficiary without the consent of the beneficiary and to receive every benefit, exercise every right, and enjoy every privilege conferred upon the insured by said policy, without the consent of the beneficiary; that it was provided in said policy that the insured might obtain cash loans on the sole security of said policy, on written request, at any time after it had been in force two full years, if premiums were duly paid to the anniversary of the insurance next succeeding the date when the loan might be obtained; that a short time prior to the 6th day of August, 1912, during the lifetime of said Frank M. Norris, and while said policy was in force and effect, said Norris applied to the defendant, at its home office in the city of New York, in the state of New York, for a loan of $1,580 from the defendant, on the sole security of said policy; that said application was accepted by the defendant at said city of New York and said loan made to said Norris and the money paid to him in the said city of New York, and that said Norris, upon borrowing said money, executed the following loan agreement, and deposited said policy with the defendant at its home office in the city of New York as collateral security for said loan, in accordance with the terms of said loan agreement:

" 'Policy Loan Agreement.

" 'Pursuant to the provisions of policy No. 2243263 issued by the New York Life Insurance Company on the life of Frank M. Norris, the undersigned have this day obtained a cash loan from said company of the sum of fifteen hundred eighty and xx/100 dollars ($1,580.00) the receipt of which is hereby acknowledged conditioned upon pledging as collateral said policy with said company as sole security for said loan and giving assent to the terms of this policy loan agreement; therefore, in consideration of the premises, the undersigned hereby agree as follows:

" '1. To pay said company interest on said loan at the rate of five per cent. per annum, payable in advance from this date to the next anniversary of said policy, and annually in advance on said anniversary and thereafter.

" '2. To pledge, and do hereby pledge, said policy as sole security for the payment of said loan and interest, and herewith deposit said policy with said company at its home office.

" '3. To pay said company said sum when due with interest, reserving, however, the right to reclaim said policy by repayment of said loan with interest at any time before due, with repayment to cancel this agreement without further action.

" '4. That said loan shall become due and payable—(a) either if any premium on said policy or any interest on said loan is not paid on the date when due, in which event said pledge shall, without demand or notice of any kind,

206 ALA.—42

every demand and notice being hereby waived, be foreclosed by satisfying said loan in the manner provided in said policy; (b) or (1) on the maturity of the policy as a death claim or an endowment; (2) on the surrender of the policy for a cash value; (3) on the selection of a discontinuing option at the end of any dividend period. In any such event the amount due on said loan shall be deducted from the sum to be paid or allowed under said policy.

" '5. That as the amount of loan available at any time includes any previous loan then unpaid, the execution of a subsequent loan agreement, without further action, cancels and annuls any previous agreement.

" '6. That the application for said loan was made to said company at its home office in the city of New York, and was accepted, the money paid by it, and this agreement made and delivered there; that said principal and interest are payable at said home office, and that this contract is made under and pursuant to the laws of the state of New York, the place of said contract being said home office of said company.

" 'In witness whereof, the said parties hereto have set their hands and affixed their seals, this 6th day of August, 1912.

" 'Frank M. Norris. [L. S.]

" 'Signed and sealed in the presence of J. H. Guild, Witness.'

"And defendant further avers that, in said policy, it was agreed that said loan should be satisfied as follows: 'If any premium or interest is not paid on or before the date when due and if there is an indebtedness to the company —insurance for the net amount that would have been payable as a death claim on said due date will automatically continue from said due date as term insurance for such time within the endowment period as the excess of three-fourths of the reserve under this policy over such indebtedness will purchase at the age of the insured on said due date, according to the company's present published table of single premium insurance for term insurance and no longer.'

"Defendant further avers that the premium on said policy, that became due and payable on the 3d day of July, 1913, was not paid, nor was any part of it paid by said Norris, nor was any part of the interest which became due on said loan on the 3d day of July, 1913, ever paid, and that said loan thus became due, and the pledge of said policy, under the terms of said loan agreement, became subject to foreclosure.

"Defendant further avers that thereupon on, to wit, Jan. 15, 1914, during the lifetime of said Norris, it foreclosed said loan and the pledge of said policy, in accordance with the terms of said loan agreement, and satisfied the indebtedness due under the policy, out of the reserve held by it under said policy; that the indebtedness under said policy exceeds three-fourths of the reserve held by the company under said policy, and that, therefore, said policy became of no further value. Defendant avers that said pledge of said policy and said foreclosure were valid under the laws of the state of New York, said laws being that the parties to a pledge of collateral security for the payment of a debt or loan may provide by contract for any manner of disposing of the

pledge to satisfy the claim upon it, and further as follows: In section 16, c. 326, vol. 1 of the Laws of New York for the session of the Legislature of the state of New York for the year 1906. 'Any life insurance company may lend a sum not exceeding the lawful reserve which it holds upon said policy on the pledge to it of such policy and its accumulations as collateral security.'

"4. Defendant adopts all the allegations of plea 3 for plea 4 down to and including the words, 'that the indebtedness under said policy exceeded three-fourths of the reserve held by the company under said policy,' and adds thereto the following: Defendant furthers avers that on, to wit, January 15, 1914, it deposited in the United States mails, properly addressed to Frank M. Norris at his post office and street address in Birmingham, Ala., with sufficient postage, a letter notifying him that, under said loan agreement, said policy had been pledged to and deposited with the defendant as collateral security for said cash loan, and that the premium and interest due on said policy on the 3d day of July, 1913, not having been paid, the principal of said loan became due and had been settled according to the terms of the policy, and that the policy had no further value.

"Defendant avers that said Norris did not deny the validity of said settlement and did not raise any protest thereof, but with knowledge of said foreclosure did not make any further claim of right to or interest in said policy during the remainder of his lifetime and up until his death on, to wit, February 12, 1916, nor did he pay or offer to pay any further interest on said debt nor premiums on said policy.

"Nor did said Norris ever inform the defendant that any of its agents or employees had for any reason refused or failed to accept the premium or interest on said loan due in July, 1913, for the failure to pay which said foreclosure was had, nor did said Norris make any claim that the defendant's agents or employees had failed or refused to accept said premium for any reason whatever, but thereafter said Norris accepted said foreclosure of said policy as valid and binding.

"Wherefore defendant says plaintiff is estopped to proceed in this suit.

"5. For plea 5 defendant adopts all the allegations of plea three, down to and including the words, 'that the indebtedness under said policy exceeded three-fourths of the reserve held by the company under said policy.' And defendant adds thereto the following: And defendant avers that the reserve held by it under said policy at the date of said foreclosure amounted to, to wit, $1,765, and that, after satisfying said indebtedness, there remained a balance of $185 of the reserve held by defendant under said policy with which, under said provision in said policy, to purchase term insurance for $3,420, the net amount that would have been payable as a death claim on said date; and defendant avers that, at the age of the said insured on said date, to wit, 56 years, the defendant's then present published table of single premiums for term insurance for policies of similar character to said policy, was $41 per $1,000 for the first year of insurance, and $42 per $1,000 for the second year; and that said excess of $185 of the reserve over the

indebtedness under said policy applied to the purchase of term insurance for said amount of $3,420 did not and would not have extended said policy, or purchased said term insurance for a longer period than, to wit, October 25, 1914, and said Norris having died on, to wit, February 12, 1916, there is no liability to the plaintiff under said policy.

"A. The defendant avers that it was provided in said policy that, if the premium should not be paid thereon within one month from its due date, to wit, July 3d of each year, that the same should lapse, and defendant avers that the insured, Frank M. Norris, failed to pay the premium due on said policy on, to wit, July 3, 1914, and failed to pay the same within one month thereafter, wherefore the defendant says that said policy lapsed.

"B. The defendant avers that it was provided in said policy that, if the premium should not be paid thereon within one month from its due date, to wit, July 3d of each year, that the same should lapse; and defendant avers that the insured, Frank M. Norris, failed to pay the premium due on said policy on, to wit, July 3, 1915, and failed to pay the same within one month thereafter, wherefore the defendant says that said policy lapsed.

"C. Further answering each count of the complaint, the defendant says that the insured, Frank M. Norris, on, to wit, August 6, 1912, borrowed from the defendant the sum of $1,580 and deposited said policy with the defendant under a pledge as collateral security to secure the payment of said sum of money, and that the insured agreed to pay the defendant yearly, in advance, the sum of 5 per cent. interest on said loan, and defendant avers that said loan has never been paid nor the interest thereon, nor has the annual premium of $300.15, due under said policy on, to wit, July 3, 1913, and, to wit, July 3, 1914, and, to wit, July 3, 1915, ever been paid, and defendant claims said sum of $1,580 with interest and the two said sums of $300.15 each, with interest, as due by said Norris to it, and offers to set off the same against the amount claimed in this suit."

The following replications were filed by the plaintiff to each plea, separately and severally. Defendant's demurrers to each replication, as an answer to pleas 3 to 6, inclusive, and pleas A and B, were overruled, and defendant's demurrers were sustained to these replications as an answer to plea C. The effect of this was that these replications were allowed by the court to all the pleas, except plea C:

"Comes plaintiff, in the above-styled cause, and for replication and answer, separately and severally, to each plea from 1 to 6 inclusive, as amended, and pleas A, B, and C, filed by the defendant, says that the allegations of said pleas are not true.

"Second. Comes the plaintiff and for further replication and answer, separately and severally, to pleas 3, 4, 5, and 6 of defendant, as amended, and pleas A, B, and C, says, as a separate answer and replication to each of said pleas, that defendant is not entitled to the benefit of the facts attempted to be set up in said plea, for that, heretofore, in, to wit,

the month of July, 1913, plaintiff, Celia. Norris, wife of Frank M. Norris, insured under said policy sued upon at the instance of Frank M. Norris, and in his behalf, and to protect plaintiff's interest within the time covered · by the provisions of said policy, and in accordance with the express provisions of said policy, offered to pay to defendant, for Frank M. Norris, the full amount of premium and interest then due on said policy, and interest due on said loan. And plaintiff further avers that this offer of Celia Norris, plaintiff in this case, was refused by the defendant, acting through its agent or servant, then and there acting within the line and scope of his employment, refused to receive of plaintiff the premium and interest to which the defendant was entitled, and did, wrongfully and in violation of said policy, reject the offer of payment made by the plaintiff. Plaintiff further avers that said policy does provide as follows: 'If any premium or interest is not paid on the date when due, the company will restore the policy as of the date of such nonpayment, on payment by the insured of such premium or interest within one month thereafter, with interest.' Plaintiff further avers that her offer to pay said premium. interest and loan interest for Frank Norris was within 30 days of the time such premium became due. Wherefore plaintiff avers that defendant is estopped to set up any forfeiture of said policy based on the nonpayment of premium.

"Third. Comes plaintiff and, for further replication and answer, separately and severally, to pleas 3, 4, 5, and 6 of defendant, as amended, and pleas A, B, and C, says that, during the month of July, 1913, plaintiff, Celia Norris, wife of insured, Frank Norris, at the instance of Frank Norris and in his behalf and to protect plaintiff's interest, did go to the office of the defendant, in the city of Birmingham, Ala., and did there offer to pay to the defendant the full amount of the premium and interest due from the insured on said policy. and the full amount of interest due on said loan, and that the agent of the defendant, acting within the line and scope of his employment by defendant, did fail to let plaintiff pay the amount of the premium and interest due on said policy and interest on said loan and did fail and refuse to accept payment of said premium and interest and loan interest by the plaintiff. Plaintiff further avers that, within 30 days thereafter, she again went to the office of the defendant, in Birmingham, Ala., but the defendant's agent, acting within the line and scope of his authority, refused and failed to give plaintiff any information that would enable plaintiff to pay the premium and interest due and interest on said loan, and did refuse to accept payment of said premium and interest on said loan, and did refuse to accept payment of said premium and interest and interest due on said loan. Plaintiff further avers that, under and by virtue of the following provisions of said policy, to wit: 'If any premium or interest is not paid on the date when due, the company will restore this policy as of the date of such nonpayment, on payment by the insured of such premium or interest within one month thereafter with interest.' Wherefore plaintiff avers that the defendant is estopped to

set up or claim any forfeiture of said policy by reason of nonpayment of premium and that, by virtue of the fact, hereinabove set out, plaintiff is entitled to recover the full amount of said policy, with interest.

"Fourth. Comes plaintiff and for further replication, and answer, separately and severally, to pleas 3, 4, 5, and 6 of defendant, as amended, and pleas A, B, and C, says that, under and by virtue of the terms of said policy, it is provided:

" 'First. If any premium is not paid on or before the date when due, and if there is no indebtedness to the company—the insurance will automatically continue from such due date as term insurance as follows, and no longer, namely, for 37 days, if premiums have been paid for 3 months; for 45 days, if for 6 months, and for 53 days, if for 9 months; for 60 days, if for one year and less than two years; and for the period specified on the second page, if premiums have been paid for two years or more. And the amount of cash, if any, on each $1,000 of this policy, specified on the second page with and following such period of term insurance, will be payable to the insured at the end of said term, if then living. In lieu of such automatic term insurance, if premiums have been paid for two years or more on the insured's written request within six months from said due date, but not otherwise, this policy will be indorsed for the amount of paid-up insurance stated on the second page. · Such paid-up insurance shall be payable at the death of the insured, if death occurs within the endowment period, or to the insured, if living at the end of such period.'

" 'Second. If any premium or interest is not paid on or before the date when due, and if there is an indebtedness to the company—insurance for the net amount that would have been payable as a death claim on said due date will automatically continue from said due date as term insurance for such time within the endowment period, as any excess of three-fourths of the reserve under this policy over such indebtedness will purchase at the age of the insured on said due date, according to the company's present published table of single premiums for term insurance, and no longer. Should said excess be more than sufficient to purchase term insurance to the end of the endowment period, a pure endowment shall be purchased, payable to the insured in cash at the end of said period if then living, for such amount as the remainder of such excess will purchase at the age of the insured on said due date. In lieu of such automatic term insurance and pure endowment, on the insured's written request within six months from said due date, but not otherwise, this policy will be indorsed for such amount of paid-up insurance, as said excess will purchase at the age of the insured on said due date, according to the company's present published table of single premiums. Such paid-up insurance shall be payable at the death of the insured, if death occurs within the endowment period, or to the insured, if living at the end of such period.' .

"Plaintiff further avers that the insured, Frank Norris, was, to wit, 48 years of age at the time he took said insurance and that he paid premiums thereon or payments thereon were tendered defendant for a period of, to wit,

8 years, so that, under and by virtue of the provisions of said policy and by virtue of the table on page 2 of the policy, the insured had term insurance up to and including the date of his death."

The following was added by way of averment to the second, third, and fourth replications:

"Cash Loans.—The insured may obtain cash loans on the sole security of this policy on written request, at any time after it has been in force two full years, if premiums are duly paid to the anniversary of the insurance next succeeding the date when the loan may be obtained. The insured shall pledge this policy, and its accumulations as collateral security for such loans in accordance with the company's then existing form of policy loan. The amount of loan available at any time is stated on the second page, and includes loans then unpaid. Interest will be at the rate of 5 per cent. per annum, payable in advance to the next anniversary, and annually in advance on that date and thereafter."

The plaintiffs, in behalf of said Frank Norris, did offer to pay the interest due on said loan and thereby elect for Frank Norris to continue said loan in accordance with the terms of said policy and said tables.

The defendant filed to each replication the following rejoinders, plaintiff's demurrers to rejoinder 2 were overruled by the court, and plaintiff's demurrers to rejoinders 3, 4, 5, A, B, D, E, F, and G were sustained by the court:

"A. Now comes defendant and files rejoinder to each of plaintiff's replications 2, 3, and 4, separately and severally, and for such rejoinder, says: That, after the alleged failure or refusal of defendant or its said agent or employee to accept said premium on, to wit, July, 1913, said foreclosure as alleged in said pleas was made and had; that defendant notified the said Frank M. Norris of said foreclosure and that said policy had no further value and the said Norris acquiesced in said foreclosure and made no objection thereto, but assented to the same. And defendant avers that it was provided in said policy as follows: 'The insured was, without the consent of the beneficiary, to receive every benefit, exercise every right, and enjoy every privilege conferred upon the insured by this policy.'

"B. Further answering said replications, defendant denies the allegations thereof and takes issue thereon."

"Now comes the defendant and by way of additional rejoinder, separately and severally, to each of plaintiff's replications to defendant's pleas, separately and severally, says:

"1. Defendant takes issue thereupon.

"2. Defendant further says that, after the matter and occurrences alleged in said replications, plaintiff's husband, F. M. Norris, and the defendant, by mutual assent and during the life of said Norris, settled the liability under said policy by the cancellation of said policy and the further cancellation of a loan from the defendant to said F. M. Norris, said policy having been put up as collateral security with the defendant by said F. M. Norris, to secure the payment of said loan.

"3. Further answering said replication, defendant says that, at the time of the matters alleged in said replication, said policy had been pledged by plaintiff's husband as collateral security with the defendant, to secure a loan of $1,580, made by the defendant to him; that, after the occurrence of the matters alleged in said replication, the defendant foreclosed said pledge by the cancellation of the policy and the cancellation of said loan, and duly notified said F. M. Norris of the cancellation of both said policy and said loan, and said F. M. Norris, for a long number of years thereafter, to wit, three years, acquiesced in the cancellation of said loan and the cancellation of said policy and the said F. M. Norris made no objection thereto, made no further attempt to, or offer to, pay the premiums on said policy to keep the same in force and effect, but acquiesced in said foreclosure and said cancellation. Wherefore defendant says it is not liable to the plaintiff on said policy.

"4. Further answering said replication, defendant says that the matter and occurrences alleged in said replication, and, the alleged refusal of the defendant to accept said premiums and interest on said loan, consisted in this: That, within the time of the premium under said policy and the interest on said loan was payable in 1913, to wit, July 3 to August 2, 1913, plaintiff, as agent for her husband, offered to pay to the defendant said premium and said interest, but the defendant stated to the plaintiff that it could not accept the payment at that time, that there was a question about the loan on the policy, and that they would write to the home office of the defendant and let the plaintiff hear from them; that defendant did, within a short time thereafter, to wit, one month, write to plaintiff's husband, the said F. M. Norris, stating the amount of the premium under said policy and the interest on the loan and its willingness to accept the same in payment of said premium and said interest; and requesting that the same be paid, which was duly received by said Norris within, to wit, two days; that plaintiff's said husband failed or refused, after the receipt of such information and such request from the defendant, to pay either said premium or the interest on said loan, and the same has not been paid to this day. Wherefore defendant says that it is not liable to the plaintiff in this action.

"5. In further reply to plaintiff's replication, defendant says that the matters and facts set up in said replication consist of this, to wit, that defendant stated to the plaintiff that it could not accept said premium and said interest at that time, because there was some question about the loan on said policy, but that the defendant would write to the home office and let the plaintiff hear from it; that thereafter, within, to wit, two weeks, the defendant wrote to plaintiff's said husband, expressing its willingness to receive said premium and interest and asking payment of said premium and interest and giving the amount of the same, which request and information was received by both plaintiff and said Norris within, to wit, two days; that plaintiff's said husband failed or refused to comply with said request and make said payment and likewise the plaintiff,

nor have the same been paid to this day; that thereafter the defendant foreclosed the pledge of said policy after, to wit, 8 months from the date of the receipt of said letter by plaintiff and her husband, and notified plaintiff's said husband on, to wit, January 15, 1914, of such foreclosure, and that the indebtedness to secure which said policy had been pledged was canceled and that the policy had no further value; that plaintiff's said husband did not thereafter question the validity of said foreclosure, and made no further claim under said policy and no further payments of premiums or interest. Wherefore, defendant says it is not liable."

"D. Now comes defendant and, for further rejoinder to each of plaintiff's replications, separately and severally says that the matters and occurrences alleged in said replications relate wholly to the premium due for the year 1913, and consisted in this: That plaintiff, as agent for her husband, within the time and at the times averred in said replication, offered to pay the defendant said premium and interest, but the defendant stated to the plaintiff that it could not accept such payment at said times; that there was a question about the loan on said policy and that defendant's said agent would write to the home office of the defendant and let the plaintiff hear from him. And defendant avers that, during all the time referred to in said replication. when plaintiff offered to pay said premium and interest and defendant declined to accept the same, it did not deny the existence of said policy or the validity thereof, but only declined to accept said premium for said year 1913, and said interest, until it could hear from its home office, but defendant at said time recognized that said policy was in force and effect.

"And defendant avers that thereafter within a reasonable time, to wit, two weeks, it did notify plaintiff's principal, the said Frank M. Norris, that it was ready and willing to accept said premium and said interest on said loans, and demanding and requesting that same be paid, which notification, request, and demand was duly received by said Norris within a day or two after same was sent. And defendant avers that said Norris thereafter wholly failed and refused to pay said premium and interest after receipt of said notice, demand, and request, and the same has not been paid to this day. wherefore defendant says it is not liable to the plaintiff in this action.

"E. For rejoinder E defendant adopts all of the allegations of the first paragraph 7, rejoinder D, and adds thereto the following: And defendant avers that within, to wit, two weeks, it did notify plaintiff's principal, the said Frank M. Norris, that it was ready and willing to accept the premiums due and payable under said policy and the interest due and payable on said loan, which notice and requesting and demanding the payment of the same was duly received by said Norris within, to wit. one day thereafter. And thereafter said Norris wholly failed and refused to pay the premium due under said policy for the year 1914 and has not paid same to this day, and defendant says that therefore said policy lapsed for the failure to pay the premium due on July 3, 1914, it being provided in said policy that the same should

lapse for the failure to pay the premium each year as due.

"F. Now comes defendant and, for further rejoinder to each of plaintiff's replications, separately and severally, says that on the occasion set out in said replication, when it is alleged defendant's said agent or servant refused to accept the said offer of payment of said premium and said interest and wrongfully rejected said offer of payment, said agent did not deny the existence of said policy or the validity thereof, but admitted the same and stated to plaintiff that there was some question about the loan on said policy, and he would have to write to the home office about the same and that he would let her hear from him. And defendant avers that thereafter defendant wrote to the insured direct, the same Frank M. Norris, deceased, within the time said premium and interest were due and payable under said policy, and, to wit, 2 weeks before said 30 days after July 3, 1913, had expired, requesting the payment of same, and said Norris received the same within, to wit, one day thereafter, and wholly failed and refused to pay said premium and interest, though he had sufficient time and opportunity to do so, and same have not been paid to this date. Wherefore defendant says it is not liable to the plaintiff in this action.

"G. Further answering each replication, separately and severally, defendant says that within, to wit, one month after the matters and occurrences alleged therein it requested said Frank M. Norris to pay the said premium due for 1913, and said interest, or said loan agreement would be foreclosed, which said request was duly received by said Norris, but said Norris wholly failed and refused to pay said premiums and said interest and thereafter and therefore defendant proceeded to make said foreclosure as set out in defendant's pleas, and on, to wit, January 14, 1914, it notified said Norris that said loan agreement had been foreclosed, said note canceled, and that said policy had no further value, which notice was duly received by said Norris, and said Norris thereafter made no claim to said policy and made no attempts to pay any premiums due thereunder or any interest due on said loan, but assented to the same."

Stokely, Scrivner & Dominick, of Birmingham, for appellant.

The payment of premiums under a contract of insurance is a condition precedent for the continued existence of the policy and calls for an affirmative act on the part of the insured. In other words, the affirmative duty rests upon the insured to make the payment of premiums. 14 Ruling Case Law (Insurance) 957; New York Life Ins. Co. v. Statham, 93 U. S. 24, 23 L. Ed. 789; Brooklyn Life Ins. Co. v. Bledsoe, 52 Ala. 538; Mobile Life Insurance Co. v. Pruett, 74 Ala. 496.

Where an insurance contract places upon the insured the affirmative duty of paying a premium or else suffer a forfeiture of the policy, and foreclosure of a pledge of the policy, nothing short of showing that the

act cannot be performed will relieve of the obligation. Borst v. Simpson, 90 Ala. 373, 7 South. 815; Brooklyn Life Ins. Co. v. Bledsoe, 52 Ala. 538.

When a tender of an insurance premium is made by the insured to prevent the foreclosure of his policy under a pledge of the policy, the tender must be kept good, as the tender does not discharge the debt, but merely relieves the payment of interest. Maxwell v. Moore, 95 Ala. 166, 10 South. 444, 36 Am. St. Rep. 190; Wilson v. Kirkland, 55 South. 174; 26 Ruling Case Law (Tender) 644; Odum v. Railroad Co., 94 Ala. 488, 10 South. 222; Frank v. Pickens, 69 Ala. 369; Park v. Wiley, 67 Ala. 310; Manning v. Carter, 201 Ala. 218, 77 South. 744.

A debtor who makes a tender must have the money ready to pay when called on, and must pay it to the creditor if called on, and if the first tender made is refused, the debtor must comply with a subsequent request or the prior tender is of no avail. 38 Cyc. Tender, p. 161; Ruling Case Law, Tender, § 24, p. 644; McCally v. Otey, 99 Ala. 584, 12 South. 406, 42 Am. St. Rep. 87, and 90 Ala. 302, 8 South. 158; Frank v. Pickens, 69 Ala. 369; Terrell Coal Co. v. Lacey (Ala.) 31 South. 109; note to Moynahan v. Moore, 77 Am. Dec. 481; Rose v. Brown, Kirby (Conn.) 293, 1 Am. Dec. 22; Lanier v. Trigg, 6 Smedes & M. (Miss.) 641, 45 Am. Dec. 293.

The act which prevents the performance of the contract obligation on the part of the insured must be a distinct, absolute and unequivocal refusal on the part of the insurer to perform, and must be the proximate cause of the failure on the part of the insured to perform. Borst v. Simpson, 90 Ala. 373, 7 South. 815; Brooklyn Life Ins. Co. v. Bledsoe, 52 Ala. 538.

Where the insured and the insurer mutually believe and understand that a policy has been foreclosed under a pledge of the policy with the insurer and that the indebtedness to the insurer by the insured for which the policy was pledged has been satisfied and the policy declared of no value, and the insured thereafter during his lifetime for a period of years fails to assert any claim under this policy and fails to pay the premiums thereunder, this would constitute an abandonment or rescission of the contract of insurance and would put an end to the same. Mutual Life Ins. Co. v. Hill, 193 U. S. 551, 24 Sup. Ct. 538, 48 L. Ed. 788; Mutual Life Ins. Co. v. Phinney, 178 U. S. 327, 20 Sup. Ct. 906, 44 L. Ed. 1088; Mutual Life Ins. Co. v. Sears, 178 U. S. 345, 20 Sup. Ct. 912, 44 L. Ed. 1096; Ryan v. Mutual Reserve Fund Life Ass'n (C. C.) 96 Fed. 796; Smith v. New England Life Ins. Co., 63 Ind. 769, 11 C. C. A. 411.

Black, Altman & Harris and B. M. Allen, all of Birmingham, for appellee.

An insurer's refusal of a tendered premium makes unnecessary the tender of subsequent premiums. Girard Life Insurance Co. v. Mutual Life Insurance Co. of N. Y., 86 Pa. 236; New York Life Insurance Co. v. Clopton, 7 Bush (Ky.) 179, 3 Am. Rep. 290; Knott v. Security Mutual Life Insurance Co., 161 Mo. App. 579, 144 S. W. 178; Meyer v. Knickerbocker Life Insurance Co., 73 N. Y. 516, 29 Am. Rep. 200; Continental Insurance Co. v. Miller, 4 Ind. App. 553, 30 N. E. 718; Ætna Life Insurance Co. v. Curley's Adm'r (Ky.) 47 S. W. 585; Phœnix Mutual Life Insurance Co. v. Caroline R. Doster et al., 106 U. S. 30, 1 Sup. Ct. 18, 27 L. Ed. 65; National Life Insurance Co. v. Eggleston (Tex. Civ. App.) 195 S. W. 942; Guetzkow v. Michigan Mutual Life Insurance Co., 105 Wis. 448, 81 N. W. 652; Supreme Lodge K. P. v. Connelly, 185 Ala. 301, 64 South. 362.

No forfeiture can be lawfully declared for nonpayment of a premium, if the insured has made proper tender thereof. Davis v. Northwestern Mutual Life Insurance Co., 98 Misc. Rep. 456, 163 N. Y. Supp. 56; Mutual Life Insurance Co. v. Davis (Tex. Civ. App.) 154 S. W. 1184; Meyer v. Knickerbocker Life Insurance Co., 73 N. Y. 516, 29 Am. Rep. 200; Doney v. Prudential Insurance Company of America, 99 App. Div. 23, 90 N. Y. Supp. 757; Guetzkow v. Michigan Mutual Life Ins. Co., 105 Wis. 448, 81 N. W. 652; Western & Southern Life Ins. Co. v. Giltnane, 157 Ky. 275, 163 S. W. 192; Johnson v. Standard Life & Accident Ins. Co. (Tex. Civ. App.) 97 S. W. 831.

An insured's silence when notified of wrongful forfeiture does not destroy his beneficiary's right of recovery. Purdy v. Bankers' Life Ass'n of Des Moines, Iowa, 101 Mo. App. 91, 74 S. W. 486; Travelers' Insurance Co. v. Pulling, 159 Ill. 603, 43 N. E. 762; Jones v. Preferred Bankers' Life Ass'n Co., 120 Mich. 211, 79 N. W. 204; Manhattan Life Insurance Co. v. Fields (Tex. Civ. App.) 26 S. W. 280; Wayland v. Western Life Indemnity Co., 166 Mo. App. 221, 148 S. W. 626; Aiken v. Atlantic Life Ins. Co., 173 N. C. 400, 92 S. E. 184.

An application for reinstatement by an insured, whose policy has been wrongfully declared lapsed or forfeited, is not a consent to the wrongful forfeiture. George Washington Life Ins. Co. v. Norcross, 178 Ky. 383, 198 S. W. 1156; McNaughton v. Des Moines Life Insurance Co., 140 Wis. 214, 122 N. W. 764; Hayes v. N. Y. Life Insurance Co., 68 Misc. Rep. 558, 124 N. Y. Supp. 792.

An insured's statement, without any consideration therefor, that he has no insurance, is not a waiver of his own or of his beneficiary's rights under the policy. Denison v. Masons' Fraternal Accident Association of America, 59 App. Div. 294, 69 N. Y. Supp. 291.

A tender, when kept good, prevents the running of interest; if not kept good, the only effect is to let interest run. 86 Ill. 470; Bissell v. Heyward, 96 U. S. 580, 24 L. Ed.

678. See, also, cases cited under proposition No. 9.

The insured, whose tender of premium has been refused, does not have to keep his tender good, by always keeping the precise amount of money on hand. Dennison v. Masons' Fraternal Acc. Ass'n of America, 59 App. Div. 294, 69 N. Y. Supp. 291.

Where an insurer refuses a proper tender of a premium, the measure of recovery on the policy, when the insured does not keep the tender good, is the face of the policy, less the unpaid premiums with interest on them. Fed. Cas. No. 6478; Dennison v. Masons' Fraternal Acc. Ass'n of America, 59 App. Div. 294, 69 N. Y. Supp. 291; Wayland v. Western Life Indemnity Co., 166 Mo. App. 221, 148 S. W. 626; Owens v. North State Life Insurance Co., 173 N. C. 373, 92 S. E. 168; Inter-Southern Life Insurance Co. v. Duff, 184 Ky. 227, 211 S. W. 738; Reed v. Provident Savings Life Ass'n, Society of New York, 190 N. Y. 111, 82 N. E. 734.

McCLELLAN, J. The appellee (plaintiff) was awarded judgment against the appellant on a policy of life insurance issued in 1905 by the appellant to F. M. Norris, in which appellee (insured's wife) was named as beneficiary. Norris died in 1916. For several years prior to 1912, Norris had annually borrowed from the insurer the amount necessary to pay the annually due premium on his policy, upon the security alone of the policy then deposited with the insurer. The annual premium and the interest (in advance) on the thus annually increasing loan—on the sole security of the policy—was due the 3d of July of each year. In 1912 the insured had thus borrowed, with the policy so pledged, $1,580, the interest on which had been paid up to July 3, 1913. As stated, the annual premium was also due on that date. Because of the asserted default of the insured to pay the annual premium on July 3, 1913, or within the stipulated 30-day period of grace thereafter, the insurer, on January 14, 1914, foreclosed the promise and pledge, in accordance with the statutes of New York, to which law the loan contract subjected the rights of the parties; and thereupon advised the insured by mail of the fact of foreclosure, of the satisfaction of his indebtedness to the insurer, and of the termination of any right of the insured under the policy.

The pleadings in the cause are very voluminous, covering about 36 pages. The material issues the parties were entitled to have determined were not numerous, but their statement in pleading seemed to justify the volume of writing employed in their presentation by the respective parties. The case was a typical one for the employment of the increasingly acceptable method for pleading, in short, by consent with leave to give in evidence any admissible traversing or avoiding matter that the parties might desire to assert. To recite the entire pleading would require too extended a statement for any practical purpose.

To the complaint, on the policy contract, the defendant (appellant) thru its pleas asserted, in substance, other than will be later indicated, the default and forfeiture of the policy and foreclosure of the pledge before mentioned, and also averred the absence of right to protracted insurance, to the time of insured's death, as the result of premium payment afforded by the stipulated excess in the reserve. Those matters were of course conclusive of plaintiff's right to recover, provided (a) they were sustained by the evidence in respect of their bases of fact; or (b) were not deflected, by appropriate allegation of fact, from their normal effect as legal obstacles to plaintiff's right to recover, which, being efficiently averred, were later justified, at least prima facie, by the proof relevant thereto. The defendant's plea 4 (amended) contained, with those just mentioned, these additional averments:

"Defendant further avers that on, to wit, January 15, 1914, it deposited in the United States mails, properly addressed to Frank M. Norris at his post office and street address in Birmingham, Ala., with sufficient postage, a letter notifying him that, under said loan agreement said policy had been pledged to and deposited with the defendant as collateral security for said cash loan, and that the premium and interest due on said policy on the 3d day of July, 1913, not having been paid, the principal of said loan became due and had been settled according to the terms of the policy and that the policy had no further value.. Defendant avers that said Norris did not deny the validity of said settlement and did not raise any protest thereof, but, with knowledge of said foreclosure, did not make any further claim of right to or interest in said policy during the remainder of his lifetime and up until his death on, to wit, February 12, 1916, nor did he pay or offer to pay any further interest on said debt nor premiums on said policy. Nor did said Norris ever inform the defendant that any of its agents or employees had for any reason refused or failed to accept the premium or interest on said loan due in July, 1913, for the failure to pay which said foreclosure was had, nor did said Norris make any claim that the defendant's agents or employees had failed or refused to accept said premium for any reason whatever, but thereafter said Norris accepted said foreclosure of said policy as valid and binding. Wherefore defendant says plaintiff is estopped to proceed in this suit."

[1] In still other pleas, on which the trial was had, the defendant averred the failure of the insured to pay the annual premiums for 1914 and 1915, as well as the loan or the annual interest thereon from July, 1913, at any time before his death in 1916. To amended plea 4, above quoted, among others of de-

fendant's pleas, the plaintiff, thru special replications, asserted, in avoidance of the matter of amended plea 4, that insured's representative, both on July 3, 1913, the due date, and within the 30-day period of grace in August, 1913, offered to pay to the authorized agent of the insurer, at its Birmingham office, the premium then due and the interest on the loan then demandable, and that the offer was twice refused, the payments twice declined, by the agent of the insurer. The appellant complains of error in overruling its demurrer to special replications, asserting the matter just stated, as an efficient answer to plea 4. The argument is that such replications are no efficient answer to that plea, having particular reference to quoted but only partial features of that plea, the amended plea 4 being designed in respect of only part of it to assert an abandonment of the policy by the insured, subsequent to the tender alleged in the special replications, or an estoppel predicated of such subsequently intervening inaction in the circumstances averred in the quoted part of amended plea 4. We find in the record no ground of demurrer taking this particular objection within the exaction of the statute, Code, § 5340. Anyway, amended plea 4 was constituted of averments borrowed from plea 3, to which were added the quoted allegations. There is much in the thus appropriated averments from plea 3 to which the matter in the special replications indicated was serviceable in avoidance of its effect, in part, in the particular that the pleas (as composed) assumed to assert a valid forfeiture and foreclosure of the policy's pledge, in virtue of an unpalliated or unexcused default in paying the premium on July 3, 1913, or within the 30-day grace period provided in the policy contract. Error cannot be pronounced of the overruling of the demurrers interposed to special replications to amended plea 4, on the theory argued here.

[2] And it may be observed in this connection that the decisions of the Supreme Court, in Mutual, etc., Co. v. Sears, 178 U. S. 345, 20 Sup. Ct. 912, 44 L. Ed. 1096, Mutual, etc., Co. v. Hill, 193 U. S. 551, 24 Sup. Ct. 538, 48 L. Ed. 788, among others cited on the brief for appellant, declare no principle that requires a different conclusion upon the differentiating facts set forth in the pleading in this case. The principle is sound and well supported in authority that no forfeiture of rights, under a life policy contract, for failure to pay an annual premium thereon, can result against the insured, if the insured has seasonably tendered the premium, and such tender has been refused, unless the insurer recants its refusal and advises the insured of that fact, mainifesting a willingness to accept the tender as of the time it was seasonably made. Knott v. Mutual Co., 161 Mo. App. 579, 144 S. W. 178; Guetzkow v. Ins.

Co., 105 Wis. 448, 81 N. W. 652; Girard Ins. Co. v. Ins. Co., 86 Pa. 236, 240; Supreme Lodge, etc., v. Connelly, 185 Ala. 301, 307, 64 South. 362.

Under these circumstances of seasonable tender and refusal, the insured's contract is preserved against forfeiture on that account, and he is not under any duty to protest, to resist, or to contest the bases or the fact of such wrongful pronouncement of the extinction of the insured's right in the premises, in order to avoid the implication of his acquiescence in, or acceptance of, the result consequent upon the insurer's breach of its duty to the insured under the contract; or to make another or other tenders of subsequently accruing premiums, unless, as stated, the insurer recants and so advises the insured as to reimpose or revive the duty of the insured to pay such subsequently accruing premiums on their due date. Supreme Lodge, etc., v. Connelly, supra; Purdy v. Life Ins. Asso., 101 Mo. App. 91, 74 S. W. 486; Wayland v. Western, etc., Co., 166 Mo. App. 221, 148 S. W. 626; Aiken v. Ins. Co., 173 N. C. 400, 92 S. E. 184.

[3] To serve the preservative purposes within the principles stated, a seasonable, effective tender is not required to be kept good by the retention of the money so tendered, every essential right of the insurer, in this aspect, being conserved by the appropriate reduction of the amount recoverable by the aggregate of the amount of the unpaid premiums, with interest thereon from the respective dates the contract stipulated they should be paid. Dennison v. Fraternal Asso., 59 App. Div. 204, 69 N. Y. Supp. 291; Owens v. Ins. Co., 173 N. C. 373, 92 S. E. 168; Inter-Southern Co. v. Duff, 184 Ky. 227, 211 S. W. 738. Like considerations lead to similar conclusions with respect to the rights of the parties under the loan agreement.

The court below took due cognizance of these principles in its rulings on the demurrers to the defendant's (appellant's) rejoinders to plaintiff's special replications. Rejoinders 4, 5, D, E, and F were interposed to special replications that averred a tender and refusal in July and August, 1913, of the premium, etc., then due; and these rejoinders carried the allegation, among others, the significance of which was to interpret the refusal averred in the special replication to an effect contradictory of the express averment thereof in the special replication—a matter serviceable to defendant and open to assertion by the defendant under its joinder of issue upon the averments of the special replications. No prejudicial error, if error at all, resulted from sustaining demurrers to rejoinders asserting the interpretative, contradictory allegations mentioned.

[4] The material issues of fact raised by the pleading—including rejoinder 2, wherein defendant set up an acquittance by mutual

assent of its liability on the policy and the cancellation of insured's indebtedness to the insurer—were, under the whole evidence, due to be submitted and were submitted to the jury for solution. According to the evidence for plaintiff, a representative of the defendant at Birmingham refused seasonable tender averred in the special replications. The plaintiff's evidence, touching this aspect of the case, was susceptible of the interpretation that the refusal was predicated of some doubt in respect of the loan by the insurer to the insured, and this fact (if so) inspired the defendant's agent to state to the insured's wife, in the presence of his daughter, that he would take up the matter with the head office and communicate later. This evidence cannot, as a matter of law, be said to show a conditional refusal. Quite differently, it rather seems to evince the assertion of a reason for the refusal—a reason, the evidence nowhere shows, was ascertained by the defendant to be ill founded or which the defendant afterwards withdrew or repudiated through definite advice to the insured or his representative. The correspondence shows, unmistakably, that the insurer regarded the insured as in entire default with respect to the July, 1913, premium, on that account pronounced the policy a "lapsed" policy, and, so affirming, sought to induce insured to proceed as for a reinstatement consequent upon his default; whereas, if plaintiff's evidence of seasonable tenders was accepted by the jury, the insured was not in default at all, was still entitled to the benefit of the insurance the policy contract assured. The action of the insurer, in January, 1914, in foreclosing on the pledge of the policy (sole security for the loan) for failure to pay the July, 1913, premium, precludes any doubt of the defendant's attitude in the premises. From the whole evidence, it is apparent that no communication, oral or written, manifesting the insurer's recantation or notifying insured thereof, will be or can be produced; this to the end of reimposing upon the insured the duty of paying the July, 1913, premium.

[5] There was no reversible error in sustaining an objection to this question propounded by defendant to its witness Lantrip: "What did he [Norris] state [in 1915] with reference to trying to get a policy from the New York Life Insurance Company?" The fact that Norris had, in 1915, applied in writing for a policy of insurance with this defendant, thru its agent Lantrip, was admitted in evidence without objection; and the witness stated (also without objection) that Norris, in answer to a question in the application, said he had no insurance. In explanation of the quoted question to Lantrip, counsel "offered to show that Norris stated that he would come to Birmingham and get a policy through his regular physician here"

—this after his application, in 1915, had been rejected. If it is assumed (quite doubtfully) that the quoted question to Lantrip was not subject to the objections interposed thereto, no prejudice resulted from its exclusion, the defendant having already the benefit of Norris' affirmation that he then (1915) had no insurance—a declaration that the expected answer to the excluded question to Lantrip would not have materially aided or amplified.

[6] Thru written requests, numbered 9 and 10 (assignments 62 and 63), the defendant sought to have the jury instructed that plaintiff could not recover, if the insured made the mentioned application for new or other insurance in 1915, and therein stated that he had no insurance. The principles illustrated in the analogous cases of Ins. Co. v. Norcross, 178 Ky. 383, 198 S. W. 1156; Mc-Naughton v. Ins. Co., 140 Wis. 214, 122 N. W. 764; Hayes v. Ins. Co., 68 Misc. Rep. 558, 124 N. Y. Supp. 792; Dennison v. Fraternal Asso., supra; Aiken v. Ins. Co., supra, justified the refusal of these requests (9 and 10) for instruction. If, as plaintiff's evidence went to show, there was, because of seasonable tenders of the 1913 premium, no ground for forfeiture of insured's rights under the policy, the policy continued in force, notwithstanding the insurer's ill-founded declaration and insistence that the policy had "lapsed" on account of the failure of the insured seasonably to pay the July, 1913, premium. The mere assumption of the insured in and under such circumstances, however formally expressed, afforded no basis for conclusions that he had acquiesced in the asserted forfeiture or had raised up an estoppel against the assertion of insurer's liability under the policy; no consideration for the relinquishment of insured's right under the policy being shown to have passed to him.

[7] It is insisted that rejoinder 2 was conclusively established in the evidence. It results from the application of the principles earlier stated in this opinion, that Norris' omission or failure to take active steps to repudiate the asserted forfeiture and foreclosure, after notice of the fact from the insurer, or his entire inactivity or silence thereafter, did not prejudicially affect any right he had under the policy, if the tenders asserted were found by the jury to have been seasonably made; and, of course in that state of the law, such inactivity or silence did not suffice to establish the acquittance and settlement averred in rejoinder 2.

A large number of the assignments of error are predicated of the refusal of requested instructions and of excerpts from the oral charge of the court. Under the applicable principles of law, before stated, there was no error in these particulars. Authorities cited to the contrary, in which appropriate account was not taken or could not be there

taken of seasonable tenders of premium on which forfeiture, etc., was asserted against liability on the policy, are not apt or in-·fluential, in the circumstances presented by this contest.

[8] There was no error in sustaining plaintiff's objection to the question propounded to the defendant's witness Toombs, viz.: "What was the substance of the main contention of the plaintiff or her agents up to that time?"—meaning the time of the first trial in 1919. If the question had been permissible otherwise, the essence of its effect had been already stated by the witness.

The judgment is affirmed.

Affirmed.

SOMERVILLE, THOMAS, and MILLER JJ., concur.

On Rehearing.

McCLELLAN, J. [9] In the argument supporting the application for rehearing, the only matter presented for reconsideration brings into question the declination of this court to affirm reversible error of the trial court's action, in sustaining demurrers to rejoinders 4 and 5. These rejoinders were addressed to special replications averring refusal, without qualification, to accept seasonable tender of the July, 1913, premium. In material aspects, these rejoinders sought to interpret, as qualified or conditional, the refusal of tender averred in the replications to have been declined without qualification or condition. The defendant (appellant) joined issue on the allegations of the replications; asserting the unqualified refusal to accept seasonable tender, thereby rendering relevant and admissible evidence designed to sustain defendant's (appellant's) theory that the refusal of tender was qualified or conditional; whereupon this court concluded, without passing upon the sufficiency of rejoinders 4 and 5, that no prejudice to appellant resulted from sustaining demurrers to rejoinders 4 and 5. This construction of the rejoinders was justified by the terms employed by the pleader in the first sentences thereof. In each it is averred, but interpretatively in a material aspect that "the alleged refusal of the defendant * * * consisted in this, * * *" and that "the matters and facts set up in said replication [e. g., an unqualified refusal of tender] consist in this. * * *" (Italics supplied.) In the printed brief for appellant, these rejoinders (4 and 5) are treated as asserting a refusal of a character in contradiction of the unqualified, unconditional refusal averred in the replications.

On reconsideration, the court remains convinced that the conclusion pronounced with respect to rejoinders 4 and 5 is correct. Application for rehearing is hence overruled.