DAGGETT v. PRUDENTIAL LIFE INS. CO.

(Division A. Mar. 16, 1936. Suggestion of Error Overruled Mar. 30, 1936.)

[166 So. 405. No. 31984.]

**H. B. Everitt,** of Pascagoula for appellant.

Wells, Wells & Lipscomb, of Jackson, for appellee.

**McGowen, J.,** delivered the opinion of the court.

A demurrer interposed by the appellee, the Prudential Life Insurance Company, was sustained to a bill filed against it by William A. Daggett, the appellant, which bill sought to correct the name of the insured and to recover the face value of an insurance policy less a loan thereon. The court having sustained the demurrer, the appellant declined to plead further, and his bill was finally dismissed.

The facts set out in the bill and exhibits are, substantially, as follows: On January 26, 1916, the appellee, the insurer, issued to "Nasta A. Doggett" a life insurance policy for five hundred dollars on which there was to be paid an annual premium of twenty-two dollars and sixty-seven cents. On September 16, 1931, the son of the insured, appellant here, was made beneficiary in the policy, and the insured died on November 26, 1933.

In this suit the beneficiary seeks to recover the face value of the policy less an indebtedness outstanding against same.

The life insurance policy involved provided for a cash surrender and cash loan value on the sole security of the policy after it had been in force for three years, and there was set out in the policy a table of values showing the cash surrender value and the cash loan value at the end of each policy year, which values increased from year to year after three years. By the terms of the policy, the cash surrender and cash loan value, at the end of each policy year, would be available to the insured at any time during that year discounted at the rate of six per cent. per annum, provided the annual premium for that year had been paid, and provided the loan made would bear interest at the rate of six per cent. per annum.

On November 5, 1931, the insured executed a loan certificate by which she applied for a loan on said policy of one hundred eighty-four dollars and four cents,

providing as follows: "This is to certify that I, the un-
dersigned Nastas A. Doggett, insured under Ordinary
Policy No. 2141925 issued by the Prudential Insurance
Company of America, have this day borrowed from the
said Company the sum of one hundred ninety-four and
04/100 and hereby assign, transfer and set over unto the
said Company, its successors and assigns, the said Policy
and all profits and benefit now due or which may here-
after become due thereon, to secure the repayment of
said loan and the interest thereon as herein provided."

The policy would have been in force sixteen years on
January 26, 1932, and then had a cash surrender and
cash loan value of one hundred ninety-seven dollars. It
was determined that the full loan value of the policy at
the time of the application was one hundred ninety-four
dollars and four cents. At the time of the application for
the loan, the insured applied for what is known as a
"Loan Policy," which was then being offered, and which
was issued for the amount of the loan against the life
insurance policy, so that if the insured should die during
the time the loan on the life insurance policy was out-
standing and unpaid, this loan policy should pay the
indebtedness, thus guaranteeing to the beneficiary the
full face value of the policy. This loan certificate further
provided, among other things as follows:

"I agree that if any premium, except the first, on the
insurance herein applied for be not duly paid, the amount
of such premium shall be added to and become a part
of the loan on Policy No. 2141925, and shall bear interest
at the same rate and be subject to the same conditions."
The loan certificate and the application for the loan poli-
cy were executed contemporaneously, and the latter pro-
vided, among other things, as follows;—

"First. That the said loan shall bear interest at the
rate of six per cent per annum, payable at the end of
each policy year, and that the said interest, unless duly
paid, shall be added to the above loan and bear interest
at the same rate and on the same conditions.

"Second. That if the term loan insurance shall be issued in connection with the said loan, the amount of any premium, except the first, on account of such insurance not duly paid, shall be added to the said loan and bear interest at the same rate and on the same conditions."

On November 5, 1931, the insurer issued and delivered to the insured the loan policy applied for, the annual premium on which was fifteen dollars and fifty-two cents. The insured was then fifty years of age. This loan policy was a renewable term policy in the sum of one hundred ninety-four dollars and four cents on the life of the insured payable to the insurer, in payment of the indebtedness outstanding against the life insurance policy. When this loan was made, the appellee deducted two dollars and twenty-four cents therefrom to pay the premium on the loan policy up to January, 1932, the anniversary date of the life insurance policy. On January 26, 1932, the interest became due, and this interest was added to the loan made against the life insurance policy of one hundred ninety-five dollars and seventy-nine cents, at which time the full loan value of the policy was one hundred ninety-seven dollars. On January 26, 1932, the annual premium of twenty-two dollars and fifty-seven cents became due on the life insurance policy, and the premium of fifteen dollars and fifty-seven cents became due on the loan policy. Within the days of grace allowed by the policy, the insured paid the full amount of the premium on the life insurance policy, which increased the amount of the cash loan or cash surrender value of the policy to two hundred eight dollars, and which was available to the insured at any time that year discounted at six per cent. The insured did not pay the annual premium of fifteen dollars and fifty-seven cents at any time that year, or thereafter.

The provisions of the loan certificate directed the appellee to maintain the loan policy in force by charging the premium therefor against the indebtedness on the life

insurance policy, and under these provisions the insured maintained both policies in force until April 11, 1932.

The indebtedness against the policy on January 26, 1932, was claimed by the insurer to be one hundred ninety-five dollars and seventy-nine cents. Interest on this sum to April 11, 1932, amounted to two dollars and forty-five cents. The accrued premium on the policy to that date was three dollars and twenty-three cents, and interest on this amount was nineteen cents. The interest on the indebtedness from January 26 to April 11, 1932, including interest on the loan policy, was five dollars and eighty-seven cents. The sum of all these charges made a total outstanding indebtedness against the policy of two hundred one dollars and sixty-six cents, at which time the cash surrender value and cash loan value of the policy was one hundred ninety-eight dollars and fifty-four cents, and thereby the indebtedness against the policy on April 11, 1932, exceeded the loan value or cash surrender value by three dollars and twelve cents.

The exhibits show that the insurer notified the insured of the above facts on or about April 8, 1932, stating that unless the indebtedness was reduced, the life insurance policy would be cancelled. This notice, contained in a letter, was ignored by the insured, and she did not thereafter reduce the indebtedness during her lifetime. After she failed to pay the premium on the loan insurance policy, thirty days after the notice was sent to her, the insured was advised by the insurer that the life insurance policy was canceled.

In April, 1933, E. H. Bacot wrote a letter to the insurer inquiring as to the status of the life insurance policy, and what would be required to reinstate it. The insurer replied promptly, advising of the cancellation of the life insurance policy by it in May of the year before because of the indebtedness against the policy exceeding the cash surrender value. No response was made to this letter of the insurer.

From the time the notice of cancellation was sent to

the insured, until her death, she made no protest against the cancellation of her policy, nor did she offer to pay the premiums, or any other sums, due in January, 1933. The notice of cancellation forwarded to the insured by the insurer conformed to the provisions of the loan certificate.

Although the loan certificate, which was really an assignment of the policy, contained provisions that the amount of any premium, except the first, might be charged against the loan value of the life insurance policy, when this loan policy was actually issued and delivered to the company, these provisions which we have set forth did not appear therein. The loan policy contained this provision: "If any premium be not paid when due as specified herein, the policy shall be void and all premiums forfeited to the company to pay any premium shall not maintain this policy in force beyond the date when the payment becomes due." In the policy delivered to her, there was no provision for adding the unpaid premium to the indebtedness, nor was there any provision that premiums per day or per month accruing on the loan policy could be so charged on the indebtedness.

The appellant contends here that (1) because of the variance between the loan policy and the application therefor, and the assignment of loan certificate by the insured, and the loan policy actually issued, it was inequitable and unjust for the insured to carry the premium on the loan policy as a charge against the insured's indebtedness on her failure to pay same on the anniversary date, and that it ought to have exercised its prerogative then and there to cancel the loan policy for failure to pay the premium, and that, at all events, the insurer, on April 8, 1932, when it notified the insured of its intention to cancel the life insurance policy, left out of view the fact that if the policy was attempted to be canceled within thirty days from that date, she had to her credit the payment of the premium which she had made within the days of grace after January 26,

1932, which, if taken into account, would certainly have shown that her indebtedness did not exceed the cash surrender value of the policy, and that therefore the cancellation was wrong. (2) Appellant then contends that the court below erred in holding that the policy was forfeited for failure to pay or tender the premium on the anniversary date, January 26, 1933, even though the insurer wrongfully canceled the policy in April, 1932. (3) Appellant further contends that if the policy was wrongfully canceled, the insurer was under no duty to pay or offer to pay the premium which accrued on the life insurance policy on January 26, 1933, because the wrongful cancellation of the policy by the insurer was, in legal effect, tantamount to a refusal to accept further premiums on said policy.

We must remark that the contract executed by the insured in her application for a loan term insurance policy by which she agreed that the subsequent premium on that policy might be charged against the loan at a time when she had borrowed the full cash surrender value of her life insurance policy, created a very novel situation. For example, she paid the premium on the life insurance policy at the next anniversary date within due time, but she did not pay the premium on the loan policy which accrued and was due to be paid by her on the same anniversary date. Thereby, immediately, under the contract, the option to automatically cancel the loan policy came into operation. The insurer, however, accepted the premium on the life insurance policy, but did not charge the full amount of the premium due on the loan policy on that date against the loan, but continued to carry both policies until April 11, 1932, only charging a proportionate part sufficient to carry the loan policy until that date.

When the life insurance policy was canceled, the payment of three dollars and twelve cents by the insured to the insurer prior to the cancellation would have prevented it. The insured made no protest, did not offer

to pay any sum at any time thereafter, nor was any effort made to pay any sum to the date of the filing of this bill. The bill does not allege that on January 26, 1933, when, if the policy had been theretofore wrongfully canceled, the regular premium on said life insurance policy was due, and a failure to pay it would authorize the insurer to cancel the policy, the beneficiary offered to pay said premium.

With these statements of fact, we are of the opinion that, even if it be conceded that the insurer wrongfully canceled the life insurance policy and had no right to do so, yet when the premium became due again on the anniversary date in 1933, the appellant was not relieved by any act of the insurer from payment of the premium on the policy. If there was no protest made on that date asserting the invalidity of the previous cancellation, there was a duty to pay or tender payment of the premium on the life insurance policy on January 26, 1933.

The appellant's position as relates to this question is best stated by a quotation from 13 C. J. 662, sec. 747, as follows: "Similarly, a tender is waived where the tenderee makes any declaration which amounts to a repudiation of the contract, or takes any position which would render a tender, so long as the position taken by him is maintained, a vain and idle ceremony."

It is further stated with reference to an insurance contract in 32 C. J., page 1355, sec. 637, that, "Where the company has declared that the policy is forfeited, it cannot thereafter predicate a forfeiture upon a subsequent omission by the insured which its own conduct has helped to bring about."

The same principle is announced by our own court in Byers v. McDonald, 99 Miss. 42, 54 So. 664, 665, where the court held that "When it is clear that a tender will not be accepted, it need not be made. It would be 'an idle and unnecessary ceremony.'"

Under the facts of this case, we do not think these well-settled principles of law are applicable to the con-

tention of the appellant that no tender was necessary because the insurer had advised the insured that the policy had been canceled. The cases cited in support of the appellant's position, as we read them, with the exception of one which will be hereafter noticed, show that there had been a tender and a dispute as to the amount necessary to be paid, and the courts, in such cases, have held that a tender was unnecessary. The appellant relies upon the following cases: Supreme Lodge K. of P. v. Connelly, 185 Ala. 301, 64 So. 362; Knott v. Security Mutual Life Ins. Company, 161 Mo. App. 579, 144 S. W. 178; Guetzkow v. Mich. Mut. Life Ins. Co., 105 Wis. 448, 81 N. W. 652, 653; Inter-Southern Life Ins. Co. v. Duff, 184 Ky. 227, 211 S. W. 738, 739; Aiken v. Atl. Life Ins. Co., 173 N. C. 400, 92 S. E. 184, and N. Y. Life Ins. Co. v. Norris, 206 Ala. 656, 91 So. 595, 603. The last-named case is the only one that contains any expression which might tend to support appellant's position here. In that case Norris paid no premiums for 1913 to 1916, and a recovery was permitted. The causa causans of his failure to pay or tender subsequent premiums is thus adverted to in the opinion: "If, as plaintiff's evidence went to show, there was, because of seasonable tenders of the 1913 premium, no ground for forfeiture of insured's rights under the policy, the policy continued in force, notwithstanding the insurer's ill-founded declaration and insistence that the policy had 'lapsed' on account of the failure of the insured seasonably to pay the July, 1913, premium. The mere assumption of the insured in and under such circumstances, however formally expressed, afforded no basis for conclusions that he had acquiesced in the asserted forfeiture or had raised up an estoppel against the assertion of insurer's liability under the policy; no consideration for the relinquishment of insured's right under the policy being shown to have passed to him."

In Watts v. Metropolitan Life Ins. Co., 211 Ala. 404, 100 So. 812, the above language was set forth, and the

court then said that the Norris Case left out of view the case of Brooklyn Life Ins. Co. v. Bledsoe, 52 Ala. 538, as to the duty of the insured to "keep good" the tender of the first premium, and to show that assured was ready, able, and willing to make payment of subsequent premiums. To that extent, the Norris Case was over-ruled or modified.

In the case at bar, when the insured was notified by the insurer that her policy had been canceled, it was her duty, when the time came to make payment of another premi-um, to make protest, or tender payment. She never uttered a word, and everything she did was calculated to lead the insurer to believe that she acquiesced in the cancellation. She never paid a dollar, or offered to pay anything, and the most that could be said is that the payment of the premium on the life insurance policy in January, 1932, kept it in force until the anniversary date in January, 1933. She did not pay, and it is not as-serted that she was ready, willing, and able to pay. On the contrary, it is fair to assume that while she was liv-ing she had borrowed the full face value of the policy, and that by her silence and her absolute non action in refer-ence thereto, she acquiesced in the cancellation of her policy; and that, at all events, by failure to pay any premium, or tender any sum on the subsequent anni-versary date, under the terms of the contract, the can-cellation of the policy became complete.

The general rule is that if the insurance company has declared a forfeiture of the policy, and it is clearly apparent from acts or declarations that a tender would not be accepted, or if it has declared a forfeiture and refused the premiums, the fact that there has been a fail-ure subsequently to pay or tender the premiums as they fall due will not prevent a recovery on the policy. Joyce, The Law of Insurance (2 Ed.), vol. 2, sec. 1123, p. 2240.

But the case at bar does not fall within the rule. The insurer in the case here notified the insured that her indebtedness thereon exceeded the value of the policy,

and that, in thirty days, if the debt was not reduced to a sum below the cash surrender value, the policy would be canceled. This notice showed how the insurer arrived at that conclusion—its view of the debt and contract. The insured ignored this notice absolutely, and by her silence led the insurer to believe its conclusion was correct. The insured might have then directed the cancellation of the loan policy. When the annual premium became subsequently due, she did not offer to pay same, or then advise the company that a mistake had been made in the amount of her indebtedness, or in its construction of the contract.

In this situation, it is now contended, in effect, that it was not incumbent on her to pay or tender any further premiums, no matter how long she may have lived, or how many premiums may have become due.

The insured gave the insurer no opportunity to correct the error if it made one. By a tender of the premium, she would have raised the whole question, now presented, with the insured. Under these facts, her failure to pay or tender the premium worked a forfeiture of the life insurance policy.

Affirmed.